**TREEHOUSE LAW, LLP**
Ben Heikali (Cal. Bar No. 307466)
bheikali@treehouselaw.com
Ruhandy Glezakos (Cal. Bar No. 307473)
rglezakos@treehouselaw.com
Joshua Nassir (Cal. Bar No. 318344)
jnassir@treehouselaw.com
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948

**ABIRI LAW, PC**
Robert Abiri (SBN 238681)
rabiri@abirilaw.com
30021 Tomas St., Ste. #300
Rancho Santa Margarita, CA 92688
Telephone: (949) 459-2133
Facsimile: (949) 534-4367

*Attorneys for Plaintiffs and the Putative Classes*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BIANCA ALBERTINA QUINTANA, ELVIRA LISET LOPEZ, GWYENETH ETHER, and KATIE LYNN FASSBINDER, individually, and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> MUNCHKIN, INC. and WHY BRANDS, INC., <br><br> *Defendants*. | CASE NO.: <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

1

CLASS ACTION COMPLAINT

Plaintiffs Bianca Albertina Quintana, Elvira Liset Lopez, Gwyeneth Ether, and Katie Lynn Fassbinder (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, allege the following upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**INTRODUCTION**

1.       This class action seeks to remedy the misleading business practices of Munchkin, Inc. ("Munchkin") and Why Brands, Inc. ("Why Brands") (collectively, "Defendants") with respect to the manufacturing, marketing, labeling, and sale of their premium priced Munchkin Lactation Cookie Bites (the "Lactation Cookies" or "Products")[1] throughout the states of California, New York, Illinois, and the United States.

2.       Defendants exploit one of parenthood's most vulnerable moments – a mother's concern about providing adequate nutrition for her infant. Through representations on product packaging, the Munchkin website, and on online retail platforms, Defendants deceptively represent that the Products are unique lactation cookies that will increase breast milk supply and production beyond what an ordinary cookie would do.

3.       The reality is starkly different. A 2023 peer-reviewed study published in the American Journal of Clinical Nutrition specifically tested Defendants' Lactation Cookies against regular Famous Amos cookies in a double-blind randomized controlled trial of 176 nursing mothers. The results were unequivocal: Defendants' premium-priced Lactation Cookies did not increase milk production more than ordinary cookies. In fact, mothers consuming the Famous Amos cookies experienced on average greater increases in milk production than those consuming Defendants' Lactation Cookies.

4.       Despite this clear scientific evidence, as well as widespread consumer complaints regarding the efficacy of the Products, Defendants continue to market the Products

---

[1] The Products include all Munchkin Lactation Cookie Bites in any flavor or variety pack, including: 1) Lemon; 2) Lemon Bliss; 3) Oatmeal Chocolate Chip; 4) Chocolate Salted Caramel; 5) Oatmeal Raisin; 6) Classic Chocolate Chip; and 7) Caramel.

CLASS ACTION COMPLAINT

with representations that reasonable consumers understand to mean the Products will increase breast milk supply more than ordinary cookies – promises the Products do not fulfill.

5. Defendants charge consumers a premium price based on their deceptive promises.

6. Like other consumers, when Plaintiffs bought the Lactation Cookies, they read and relied on misleading lactation representations and reasonably believed the Lactation Cookies would increase their milk production and supply more than ordinary cookies would. They would not have purchased the Products or paid the premium price they did for the Products if they knew the Products were no more effective than traditional cookies. As such, Plaintiffs have been financially injured as a direct result of Defendants' false and misleading marketing practices.

**PLAINTIFFS**

7. At all relevant times, Plaintiff Bianca Albertina Quintana has resided in Hayward, California. Plaintiff Quintana purchased the Lactation Cookies in the Oatmeal Chocolate Chip flavor in or around April 2025 from a Target retailer in California. In purchasing the Product, Plaintiff Quintana read and relied on the Product's packaging claims, including but not limited to "Milkmakers," "Lactation Cookie Bites," "With Ingredients Traditionally Used To Support Breast Milk Supply," "Lactation Consultant Recommended" and "#1 Lactation Snack Brand," reasonably believing the Lactation Cookies would increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie without the same representations. Had she known this is not the case, she would not have purchased the Product or would have paid significantly less for it. As such, she has been financially injured by Defendants' business practices.

8. Despite Defendants' misrepresentations, Plaintiff Quintana would purchase the Products, as advertised, if they did in fact increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie. Absent an injunction prohibiting Defendants' deceptive advertising, she will be unable to rely with confidence on Defendants' advertising of the Products in the future.

3

CLASS ACTION COMPLAINT

9.      Since Plaintiff Quintana lacks knowledge or insight as to Defendants' specific business practices, she will not be able to determine with confidence whether the Lactation Cookies do in fact increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie. This leaves doubt in her mind as to the possibility that at some point in the future the Lactation Cookies could be made to increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie. This uncertainty, coupled with her desire to purchase the Lactation Cookies, is an ongoing injury that can and would be rectified by an injunction enjoining Defendants from making the alleged misleading representations. In addition, absent an injunction, other Class members will continue to purchase the Lactation Cookies, reasonably but incorrectly, believing they increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie.

10.      At all relevant times, Plaintiff Elvira Liset Lopez has resided in Huntington Park, California. Plaintiff Lopez purchased the Lactation Cookies in the Chocolate Salted Caramel flavor in or around early 2025 from a Walmart retailer in California. In purchasing the Product, Lopez read and relied on the Product's packaging claims, including but not limited to "Milkmakers," "Lactation Cookie Bites," "With Ingredients Traditionally Used To Support Breast Milk Supply," "Lactation Consultant Recommended" and "#1 Lactation Snack Brand," reasonably believing that consuming the Lactation Cookies would increase a mother's breast milk supply more than an ordinary, significantly less expensive cookie without the same representations. Had she known this is not the case, she would not have purchased the Product or would have paid significantly less for it. As such, she has been financially injured by Defendants' business practices.

11.      Despite Defendants' misrepresentations, Plaintiff Lopez would purchase the Products, as advertised, if they did in fact increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie. Absent an injunction prohibiting Defendants' deceptive advertising, she will be unable to rely with confidence on Defendants' advertising of the Products in the future.

CLASS ACTION COMPLAINT

12.    Since Plaintiff Lopez lacks knowledge or insight as to Defendants' specific business practices, she will not be able to determine with confidence whether the Lactation Cookies do in fact increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie. This leaves doubt in her mind as to the possibility that at some point in the future the Lactation Cookies could be made to increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie. This uncertainty, coupled with her desire to purchase the Lactation Cookies, is an ongoing injury that can and would be rectified by an injunction enjoining Defendants from making the alleged misleading representations. In addition, absent an injunction, other Class members will continue to purchase the Lactation Cookies, reasonably but incorrectly, believing they increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie.

13.    At all relevant times, Plaintiff Gwyeneth Ether has resided in Maspeth, New York. Plaintiff Ether purchased the Lactation Cookies in the Oatmeal Chocolate Chip flavor on September 29, 2024 from the Munchkin Amazon.com webpage, while residing in New York. In purchasing the Product, Plaintiff Ether read and relied on the Product's packaging claims, including but not limited to "Milkmakers," "Lactation Cookie Bites," "With Ingredients Traditionally Used To Support Breast Milk Supply," "Lactation Consultant Recommended" and "#1 Lactation Snack Brand," reasonably believing the Lactation Cookies would increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie without the same representations. Had she known this is not the case, she would not have purchased the Product or would have paid significantly less for it. As such, she has been financially injured by Defendants' business practices.

14.    At all relevant times, Plaintiff Katie Lynn Fassbinder has resided in Chicago, Illinois. Plaintiff Fassbinder purchased the Lactation Cookies in the Oatmeal Chocolate Chip flavor on July 16, 2024 from the Munchkin Amazon.com webpage, while residing in Illinois. In purchasing the Product, Plaintiff Fassbinder read and relied on the Product's packaging claims, including but not limited to "Milkmakers," "Lactation Cookie Bites," "With Ingredients Traditionally Used To Support Breast Milk Supply," "Lactation Consultant Recommended" and

5

"#1 Lactation Snack Brand," reasonably believing the Lactation Cookies would increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie without the same representations. Had she known this is not the case, she would not have purchased the Product or would have paid significantly less for it. As such, she has been financially injured by Defendants' business practices.

15.     Despite Defendants' misrepresentations, Plaintiff Fassbinder would purchase the Products, as advertised, if they did in fact increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie. Absent an injunction prohibiting Defendants' deceptive advertising, she will be unable to rely with confidence on Defendants' advertising of the Products in the future.

16.     Since Plaintiff Fassbinder lacks knowledge or insight as to Defendants' specific business practices, she will not be able to determine with confidence whether the Lactation Cookies do in fact increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie. This leaves doubt in her mind as to the possibility that at some point in the future the Lactation Cookies could be made to increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie. This uncertainty, coupled with her desire to purchase the Lactation Cookies, is an ongoing injury that can and would be rectified by an injunction enjoining Defendants from making the alleged misleading representations. In addition, absent an injunction, other Class members will continue to purchase the Lactation Cookies, reasonably but incorrectly, believing they increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie.

## **DEFENDANTS**

17.     Defendant Munchkin, Inc. is a Delaware corporation with its principal place of business located in Van Nuys, California, where it maintains its headquarters. Defendant Munchkin, Inc. conducts substantial business throughout the United States and in the State of California. From its California presence, Defendant Munchkin, Inc. directs and controls its operations, including the manufacturing, advertising, labeling, sale, and distribution of the Lactation Cookies nationwide, including in California. For example, according to LinkedIn,

6

CLASS ACTION COMPLAINT

Defendant Munchkin's Vice President of Marketing operates out of the Los Angeles metropolitan area.[2] Moreover, according to LinkedIn, Defendant Munchkin's Chief Brand Officer & Creative Director (who manages brand design) operates out of Los Angeles County.[3] Defendant Munchkin, Inc.'s marketing connections to Los Angeles, California are further evidenced by a job posting for Director of Marketing in Los Angeles, California that was listed up until April 2025.[4] Defendant Munchkin, Inc.'s false and misleading labeling and advertising of the Lactation Cookies was therefore developed, conceived, reviewed, approved, and otherwise controlled from its California presence. All critical decisions regarding the labeling, marketing strategy, and promotion of the Lactation Cookies were coordinated, authorized, and disseminated from Defendant Munchkin, Inc.'s presence in California.

18.      Defendant Why Brands, Inc. is a Delaware corporation with its principal place of business located in Van Nuys, California, where it maintains its headquarters. Defendant Why Brands, Inc., as the parent company of Defendant Munchkin, Inc.,[5] conducts substantial business throughout the United States and in the State of California. From its California presence, Defendant Why Brands, Inc. directs and controls its operations, including the manufacturing, advertising, labeling, sale, and distribution of the Lactation Cookies nationwide, including in California. For example, according to LinkedIn, Defendant Why Brands' Chief Brand Officer & Creative Director (who manages brand design) operates out of Los Angeles County. Defendant Why Brands, Inc.'s false and misleading labeling and advertising of the Lactation Cookies was therefore developed, conceived, reviewed, approved, and otherwise controlled from its California presence. All critical decisions regarding the labeling, marketing strategy, and promotion of the

---

[2] LinkedIn, *Free Play Marketing*, https://www.linkedin.com/in/freeplaymarketing, (last visited June 15, 2026).

[3] WHY Brands, *Leadership*, https://whybrands.com/leadership.html, (last visited June 15, 2026); LinkedIn, *Diana Barnes,* https://www.linkedin.com/in/barnesdiana (last visited June 15, 2026); Munchkin, *About*, https://www.munchkin.com/about?srsltid=AfmBOooEaf65GsyZVPjocYi9Cl9L38rrjFxl9EuHIGtVwVtTL-4QcTjp (last visited June 15, 2026).

[4] Built In, *Director of Marketing*, https://www.builtinla.com/job/director-marketing/4463785 (last visited June 15, 2026).

[5] WHY Brands, Inc., *Press Release* (Jan. 9, 2024), https://www.whybrands.com/press.html.

7

CLASS ACTION COMPLAINT

Lactation Cookies were coordinated, authorized, and disseminated from Defendant Why Brands, Inc.'s presence in California.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and most members of the proposed nationwide class are citizens of states different from Defendants.

20.    This Court has personal jurisdiction over Defendants because they conduct substantial business within California, including the sale, marketing, and advertising of the Lactation Cookies. Defendants have purposefully availed themselves in California by selling the Lactation Cookies in California. The Court also has general jurisdiction over Defendants because they are both headquartered in California.

21.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to claims occurred in this district. Namely, Plaintiff Quintana purchased the Products in this District.

## FACTUAL ALLEGATIONS

### I.    *The Importance Of Breastfeeding*

22.    According to the World Health Organization (WHO), "[i]n the last 12 years, the number of infants under six months of age globally who are exclusively breastfed has increased by more than 10%,"[6] meaning that approximately 48% of infants worldwide receive nothing but breastmilk for nutrition during their first several months.[7] Therefore, the number of

---

[6] World Health Org. & UNICEF, *On World Breastfeeding Week, UNICEF and WHO Call for Equal Access to Breastfeeding Support*, WHO (July 31, 2024), https://www.who.int/news/item/31-07-2024-on-world-breastfeeding-week--unicef-and-who-call-for-equal-access-to-breastfeeding-support.

[7] *Id.*

CLASS ACTION COMPLAINT

mothers who commit and dedicate their time and efforts to ensure that they can and do nurse their babies has also grown.

23. There is a great deal of pressure placed on mothers to provide the required supply and production of milk to keep their babies alive and healthy.

24. The Centers for Disease Control and Prevention (CDC) recognizes that "[b]reastfeeding has many health benefits for infants, children, and mothers" and calls it "a key strategy to improve public health."[8]

25. Other major health organizations universally recommend breastfeeding. WHO and the United Nations Children's Fund (UNICEF) advise "that children initiate breastfeeding within the first hour of birth."[9] Additionally, WHO and UNICEF[10] as well as the 2020–2025 Dietary Guidelines for Americans (Dietary Guidelines)[11] and the American Academy of Pediatrics (AAP),[12] recommend that infants be exclusively breastfed for about the first 6 months.

26. Further, mothers are advised that "infants should continue breastfeeding alongside the introduction of complementary foods for" either "at least 1 year"[13] or "2 years"[14] or "longer if desired."[15] Indeed, the CDC's 2022 Breastfeeding Report Card "data show that most

---

[8] Centers for Disease Control and Prevention, *Breastfeeding Report Card*, Breastfeeding Data | CDC (Nov. 3, 2023), https://www.cdc.gov/breastfeeding-data/media/pdfs/2024/06/2022-Breastfeeding-Report-Card-508.pdf.

[9] World Health Organization, *Breastfeeding*, Health Topics | WHO, https://www.who.int/health-topics/breastfeeding#tab=tab_2.

[10] *Id.*

[11] U.S. Dep't of Agric. and U.S. Dep't of Health and Hum. Servs., *Dietary Guidelines for Americans, 2020-2025*. (9th ed. 2020).

[12] Meek JY, Noble L. *Policy Statement: Breastfeeding and the Use of Human Milk*. AAP Section on Breastfeeding. 150 Pediatrics. e2022057988 (2022), https://doi.org/10.1542/peds.2022-057988.

[13] U.S. Dep't of Agric. and U.S. Dep't of Health and Hum. Servs., *Dietary Guidelines for Americans, 2020-2025*. (9th ed. 2020).

[14] Meek JY, Noble L. *Policy Statement: Breastfeeding and the Use of Human Milk*. AAP Section on Breastfeeding. 150 Pediatrics. e2022057988 (2022), https://doi.org/10.1542/peds.2022-057988.

[15] Centers for Disease Control and Prevention, *Breastfeeding Report Card*, Breastfeeding Data | CDC (Nov. 3, 2023), https://www.cdc.gov/breastfeeding-data/media/pdfs/2024/06/2022-Breastfeeding-Report-Card-508.pdf.

CLASS ACTION COMPLAINT

infants start out breastfeeding, and many are still receiving some breast milk at 6 months. Even some breast milk is beneficial to infants."[16]

**II.** ***Nursing Is Often A Difficult And Frustrating Challenge, Which Defendants Are Aware Of***

27. Despite these numerous benefits and recommendations, breastfeeding presents significant challenges.

28. According to an article published by Science Based Medicine in 2019, "Breastfeeding is entirely natural, yet can be exceptionally difficult for many new mothers."[17]

29. There exists an increasing "societal pressure to breastfeed, and many women feel guilty for struggling with the process, or not producing sufficient milk."[18]

30. According to the CDC, "[m]any families do not breastfeed for as long as they intend," "[a]pproximately 60% of mothers who stopped breastfeeding did so earlier than desired, and "[e]arly termination was positively associated with mothers' concerns regarding… difficulties with lactation."[19] Although exclusive breastfeeding is recommended for the first 6 months of the baby's life, the United States rates fall well short of these recommendations, with only 45.3% of families continuing to breastfeed at 3 months old.[20]

---

[16] Centers for Disease Control and Prevention, Breastfeeding Report Card, Breastfeeding Data | CDC (Nov. 3, 2023), https://www.cdc.gov/breastfeeding-data/media/pdfs/2024/06/2022-Breastfeeding-Report-Card-508.pdf.

[17] *Lactation Cookies Feed on Breastfeeding Anxieties*, Sci.-Based Med., https://sciencebasedmedicine.org/lactation-cookies-feed-on-breastfeeding-anxieties/; *see also* L. Gatti, *Maternal Perceptions of Insufficient Milk Supply in Breastfeeding*, J. Nurs. Scholarsh. 40 (4) (2008) 355–363, https://doi.org/10.1111/j.1547-5069.2008.00234.x.

[18] *Id.*

[19] Centers for Disease Control and Prevention, Breastfeeding Report Card, Breastfeeding Data | CDC (Nov. 3, 2023), https://www.cdc.gov/breastfeeding-data/media/pdfs/2024/06/2022-Breastfeeding-Report-Card-508.pdf; *see also* Eleanor C. Odom et al., *Reasons for Earlier Than Desired Cessation of Breastfeeding*. 131 Pediatrics e726 (2013), https://doi.org/10.1542/peds.2012-1295.

[20] *Id.*

CLASS ACTION COMPLAINT

31.      Further, "[p]arental perceived insufficient milk (PIM) to satisfy or nourish the infant is the principal reason parents cease to breastfeed prematurely."[21]

32.      Scientific research also suggests, "[a]pproximately 60% of lactating parents from the United States are unable to meet their personal breastfeeding goals and between 30% and 80% perceive their milk as insufficient to meet their infant's nutritional needs."[22]

33.      Defendants are keenly aware of the challenges faced by mothers in breastfeeding as shown by a number of lactation focused representations plastered all over Defendants' labeling and advertising. Indeed, Defendants' website acknowledges, "To the brand new, uninitiated mom, breastfeeding can be a journey that's both beautiful and harrowing at the same time. It's not until you're in the throes of early motherhood that you realize it may not be as easy or blissful as you once believed. Worries over milk supply, supplementation (PSA: the most important thing is that your baby is fed, regardless of how), improper latching, or mastitis can consume your mind in those early sleepless days."[23]

34.      Further, Defendants acknowledged in the past on the Munchkin website that "[m]oms are constantly busy taking care of everyone and everything, which can leave little time for proper self-care. It's important for mamas to incorporate healthy habits and wellness routines into their daily lives, however they can. And for breastfeeding moms, it's critical to ensure they're getting the right nutrients to produce quality breastmilk."

---

[21]  *Lactation Cookies Feed on Breastfeeding Anxieties*, Sci.-Based Med., https://sciencebasedmedicine.org/lactation-cookies-feed-on-breastfeeding-anxieties/; *see also* L. Gatti, *Maternal Perceptions of Insufficient Milk Supply in Breastfeeding*, J. Nurs. Scholarsh. 40 (4) (2008) 355–363, https://doi.org/10.1111/j.1547-5069.2008.00234.x.

[22]  Ana M. Palacios et al., *Effectiveness of Lactation Cookies on Human Milk Production Rates: A Randomized Controlled Trial*, 117 Am. J. Clin. Nutr. 1035 (2023), https://www.sciencedirect.com/science/article/pii/S0002916523462661?via%3Dihub.

[23] Munchkin, *Lactation Cookies & Galactagogues for Breastfeeding Moms,* https://www.munchkin.com/blog/whats-in-a-lactation-cookie?srsltid=AfmBOoqNtHxt91aKmQiQQtrkivN-KlXjm1nCYgvI2DuxtvSav9viYa5A.

CLASS ACTION COMPLAINT

35.    Defendants also state on the Munchkin website that "[t]he reality of breastfeeding can be far from the beautiful experience a woman may have envisioned during pregnancy."[24]

### III.    *Defendants Capitalize On Mothers' Breastfeeding Challenges*

36.    Defendants manufacture, market, and sell Munchkin brand Lactation Cookies and other lactation focused products nationwide across multiple channels, including brick and mortar retailers, the Munchkin website, and retail websites such as Amazon.com, Target.com, and Walmart.com.

37.    This case concerns all Munchkin Lactation Cookie Bites offered for sale by Defendants and other retailers during the relevant Class Period (the "Products").[25]

38.    Specifically, the front label of the Lactation Cookies features or previously featured prominent lactation related claims including, "Milkmakers," "Lactation Cookie Bites" and "With Ingredients Traditionally Used To Support Breast Milk Supply." *See examples on the following page.* The "Munchkin Milkmakers Lactation Cookie Bites" product name itself is misleading because the words "Lactation" and "Milkmakers" signify that the product is a specialized lactation cookie solely for lactation when in reality it will not increase a mother's supply of breast milk more than a traditional cookie would. Thus, whether read together or in isolation, these representations lead reasonable consumers to believe the Lactation Cookies are specialized cookies that will increase a mother's supply of breast milk more than a traditional cookie would. These claims are reinforced with additional front label claims representing that the Lactation Cookies are "Lactation Consultant Recommended" and that Munchkin is the "#1 Lactation Snack Brand," which lead reasonable consumers to believe the Lactation Cookies have been rigorously tested and scientifically established to be more effective at increasing a mother's breast milk supply and production than ordinary, less expensive cookies without the same or

---

[24]    Munchkin,    *How    to    Support    a    Breastfeeding    Mom:    Blog    Post,* https://www.munchkin.com/blog/how-to-support-a-breastfeeding-mom.

[25] The Products are defined in paragraph 1.

CLASS ACTION COMPLAINT

similar representations. *See examples below.* All the foregoing representations are collectively referred to herein as the "Milk Production Representations."



39.    The side label of the Products also features the claim "BRING ON THE MILK!" and the back label includes representations such as "MORE MILK, PLEASE!" displayed in all caps and large font, as well as "We're here to support you in your journey to bring on the

13

milk!" *See examples below*. These representations only exacerbate the impression that the Products are uniquely formulated cookies that will increase a mother's supply of breast milk more than a traditional cookie would.



CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT

40.    In early to mid 2026, Plaintiffs' counsel became aware that Defendants appear to have quietly changed the front labeling of some of the Products on the Munchkin Milkmakers website to remove certain claims from the Product packaging including "Milkmakers" and "#1 Lactation Snack Brand." *See example below.*



41.    Unbeknownst to consumers, the Lactation Cookies are no more effective at increasing a mother's breast milk supply than traditional cookies, which are sold at significantly lower prices.

16

CLASS ACTION COMPLAINT

42.     Indeed, a 2023 study published in the American Journal of Clinical Nutrition (the "2023 Munchkin Lactation Cookie Study") and conducted *specifically on Defendants' Munchkin Lactation Cookies* confirms that Defendants' claims are demonstrably misleading.[26]

43.     The double-blind 2023 Munchkin Lactation Cookie Study was conducted on 176 women nationwide, and participants were randomly assigned to two groups: (1) 88 women who consumed 56.5 grams (1 bag) daily of Defendants' Munchkin Lactation Cookies, and (2) 88 women who consumed conventional Famous Amos cookies (of similar weight, calories and presentation but lacking any purportedly milk supply increasing ingredients) (*i.e.*, a control group) over a 1-month period. All participants were healthy 18–45 year-old exclusively lactating women of 2-month old infants. Breast milk supply was measured for both groups using a hospital-grade breast pump.[27]

44.     Contrary to Defendants' Milk Production Representations and other lactation focused claims, the results of the study showed that changes to milk production were not statistically significant between the two groups. *Indeed, breast milk production increased more for the control group (eating Famous Amos cookies), than the intervention group (eating*

| Variable | Control ($n =$ 88) | Intervention ($n =$ 88) | Difference-in-differences[2] | $P$ value |
|---|---|---|---|---|
| Milk production rate, mL/h | | | | |
| Baseline | 41.3 (12.6) | 39.7 (14.2) | | |
| 1 mo | 47.1 (13.5) | 45.2 (14.4) | | |
| Baseline-to-1-mo difference | 5.8 (15.7) | 5.5 (17.6) | −0.33 (4.97) | 0.948 |

---

[26] Ana M. Palacios et al., *Effectiveness of Lactation Cookies on Human Milk Production Rates: A Randomized Controlled Trial*, 117 Am. J. Clin. Nutr. 1035 (2023), https://www.sciencedirect.com/science/article/pii/S0002916523462661?via%3Dihub.
[27] *Id.*

CLASS ACTION COMPLAINT

*Defendants' Munchkin Lactation Cookies) over the month*.[28] [29]

45.    In other words, the Lactation Cookies failed to increase the milk supply and production of nursing mothers upon consumption any more than the less expensive Famous Amos cookies.

46.    Further, according to an article published by Science Based Medicine in 2019, the correlation between consumption of lactation support foods and increased production is seriously lacking. The article explains that "[w]hile many foods and supplements are promoted to encourage breast milk production, there is very little evidence to suggest that these products are effective."[30]

47.    Importantly, "[c]onsidering that breastfeeding is so widespread, this is frustrating to mothers and health professionals alike. It is important to note that, seeing a business opportunity, a large industry has developed that targets women at this vulnerable time."[31]

48.    As demonstrated by the 2023 Munchkin Lactation Cookie Study and supported by the general conclusions in the Science Based Medicine article, Defendants' Lactation Cookies are unable to conform to the promises and representations made by Defendants through their Milk Production Representations and other lactation focused advertising, as set forth above and further below.

**IV.    *Munchkin Website and Authorized Third Party Retailer Claims***

49.    Defendants have historically misled consumers on the Munchkin website and third party retailer websites (including but not limited to Amazon.com, Target.com, and

---

[28] Ana M. Palacios et al., *Effectiveness of Lactation Cookies on Human Milk Production Rates: A Randomized Controlled Trial*, 117 Am. J. Clin. Nutr. 1035 (2023), https://www.sciencedirect.com/science/article/pii/S0002916523462661?via%3Dihub.

[29] In addition, the authors noted that because commercially available lactation cookies are high in calorie and sugar content, they "may attenuate postpartum weight loss without offering any major nutritional benefit, relative to other foods, in the context of a global obesity epidemic."

[30] *Lactation Cookies Feed on Breastfeeding Anxieties, Sci.-Based Med.*, https://sciencebasedmedicine.org/lactation-cookies-feed-on-breastfeeding-anxieties/; *see also* L. Gatti, *Maternal Perceptions of Insufficient Milk Supply in Breastfeeding*, J. Nurs. Scholarsh. 40 (4) (2008) 355–363, https://doi.org/10.1111/j.1547-5069.2008.00234.x.

[31] *Id.*

CLASS ACTION COMPLAINT

Walmart.com), featuring claims such as "Bring on the milk!" and "Lactation consultant recommended," the same claims seen on the Products' packaging.



50.    In the past, the Munchkin website "Milkmakers Breastfeeding and Prenatal Care" page has contained additional language stating that Defendants "embrace expecting mamas …[and] we support new moms on breastfeeding or pumping journeys with lactation support products that help boost milk supply."

**Milkmakers® Prenatal and Breastfeeding Products**

Milkmakers® products are designed to support mom's health and wellness from the inside out, making pregnancy and early motherhood a little easier on mom. We embrace expecting mamas with pregnancy-conscious skincare products, prenatal teas and more. And we support new moms on breastfeeding or pumping journeys with lactation support products that help boost milk supply. Whether you're pregnant, nursing, or looking for a thoughtful gift for a new mom, Milkmakers® is here for you.

51.    Even further, on the same website in the past, Defendants represented to reasonable consumers—mothers looking for nursing support—that Defendants understand the challenges nursing mothers face and offer products that are recommended by a variety of lactation consultants.

19

CLASS ACTION COMPLAINT

**Breastfeeding Products to Support Lactation**

From breastfeeding issues to sleepless nights, the postpartum period can be especially fraught for new moms. Finding a groove can be challenging during the fourth trimester and beyond! Milkmakers® has a variety of lactation consultant recommended products designed to support nursing moms – because we know that worrying about milk supply can be all-consuming (just remember that fed is best!). Looking for a delicious and natural way to increase supply? Our lactation cookies, snacks and teas are made with wholesome ingredients known to help boost milk production. If you have cracked nipples from direct breastfeeding, we have a natural balm for that too. Bring on the milk!

**Milkmakers® Breastfeeding**

Moms are constantly busy taking care of everyone and everything, which can leave little time for proper self-care. It's important for mamas to incorporate healthy habits and wellness routines into their daily lives, however they can. And for breastfeeding moms, it's critical to ensure they're getting the right nutrients to produce quality breastmilk.

Our lactation cookies, lactation bars and lactation teas were created to help nursing mamas get the nutrients they (and their babies) need, even with a demanding schedule.

**Milkmakers® Lactation Cookie Bites and Lactation Bars**

Our tasty lactation cookie bites and lactation bars are well-balanced treats that are filled with vitamins and minerals you need to keep your body healthy, as well as key ingredients traditionally used to support breast milk supply. They're delicious and easily fit into your busy breastfeeding lifestyle.

52.    The Munchkin website has historically included similar representations to persuade consumers to buy their Lactation Cookies over other less expensive cookies, such as "we support new moms on breastfeeding or pumping journeys with lactation support products that help boost milk supply" and "[l]ooking for a delicious and natural way to increase supply? Our lactation cookies, snacks and teas are made with wholesome ingredients known to help boost milk production."

53.    As an integral part of their marketing campaign during the class period, Defendants have also included visual representations of nursing mothers sitting alongside the cookies, which emphasize that the Lactation Cookies are specially crafted for nursing women seeking to increase their milk supply:

20

CLASS ACTION COMPLAINT





54.    Additional images with the claims "lactation consultant recommended," "#1 lactation snack brand," and "BRING ON THE MILK!" have also been featured on the Munchkin Milkmakers Amazon.com webpage.



21



55.      The Munchkin Milkmakers Amazon.com webpage also features claims like "Made with key ingredients traditionally used to support breast milk supply" and "Lactation Consultant Recommended."



CLASS ACTION COMPLAINT









56.      Despite Defendants' Milk Production Representations and other lactation focused representations and images depicted above, the premium priced Lactation Cookies are no more effective at increasing a mother's breast milk supply than traditional cookies, which are sold at significantly lower prices and are not advertised with the same lactation focused claims.

23

CLASS ACTION COMPLAINT

## V.    *Consumer Complaints Further Emphasize the Misleading Nature of the Milk Production Representations*

57.        Plaintiffs' claims are not only supported by the science – they are also directly bolstered by consumer experiences with the Products. Since at least 2018, numerous consumers have expressed negative experiences with the Products, putting Defendants on notice of the Lactation Cookies' failures to conform to Defendants' Milk Production Representations. *See examples below and on the following page from purchasers on Amazon.com.*

★☆☆☆☆ **No effect on supply, but they taste good**
By Elle in the United States on May 16, 2018
The taste and texture of these cookies is fine, however, after having a bag a day for ten days, I saw little to no increase in my supply. They are also very overpriced for what they are. I suppose if my supply had increased, it would've been worth the price, but they had no effect. My nursling is 4 months old and my 3rd breastfed child. see less

★★☆☆☆ **No milk production**
By Amazon Customer in the United States on August 23, 2019
It did not help with my milk production :(

★★☆☆☆ **Not effective**
By Amazon Customer in the United States on July 1, 2019
Expensive. Taste pretty good. Didn't make a difference in milk output. What worked for me: chocolate Oat Milk at whole foods and pumping as much as possible. see less

★★★☆☆ **milk supply**
By Jay l in the United States on October 9, 2020
Cookies taste great but I didn't see much difference in milk suppy

★★★☆☆ **Milk supply**
By Anna in the United States on May 15, 2021
.

★★★☆☆ **No milk**
By Angelica Borbon in the United States on May 10, 2021
I bought this cookies thinking they will help me produce more milk but they didn't. Waste of money. The cookies are very good but kinda dry so make sure if you buy them to drink them with milk or water.

★☆☆☆☆ **Don't bother**
By Hotwheels in the United States on June 3, 2022
Sigh. I've literally tired EVERYTHING to increase my supply so I don't have to supplement. Skin to skin, feeding on demand, hydration, herbal drops, Lactation cookies, power pumping, Reglan… nothing has helped. Since having a low milk supply is so "rare" (I call BS) it's EXTREMELY frustrating in a world where government creates a formula shortage. I only make .5oz-3oz when I power pump for an hour. And yes, I have a low supply. My baby could breastfeed for over an hour without getting full. These made zero difference. My only choice was oatmeal raisin. 260 calories which is super high and they are crunchy which is gross real cookies are supposed to be soft. Leave a chemical taste. see less

★★☆☆☆ **Taste good, no milk production tho**
Reviewed in the United States on April 3, 2025
Style: Oatmeal Chocolate Chip | Size: 10 Pack | Verified Purchase
They taste pretty good for healthy cookies. With milk I was eating 1 pack a day. Unfortunately no improvement in my milk supply. I even ate oatmeal for breakfast, and drank lots of fluids for a month straight. What I did see a slight increase from were nata de coco drinks. I'd get a large bottle and drink it and my milk went from 1 oz per boob to about 1.5 oz per boob. I realized the nata de coco drinks were helping bc when I stopped drinking them my milk went back to 1 oz. Now I drink one every day and make almost 3 oz per pump session and my babies almost 2 months. I have to remind myself, not all of us will be oversuppliers. I make enough for my baby and that's it, not a drop extra. And that's ok mama 💕

CLASS ACTION COMPLAINT

★☆☆☆☆ **Don't work for me**
Reviewed in the United States on May 6, 2025
Style: Oatmeal Chocolate Chip | Size: 10 Pack | **Verified Purchase**

My milk has slowed down since I've been eating these... but they taste good not sweet to me like I've seen other reviews wish it helped

★☆☆☆☆ **Wouldn't recommend**
Reviewed in the United States on May 19, 2025
Style: Oatmeal Chocolate Chip | Size: 10 Pack | **Verified Purchase**

If it was for the taste I would give it 3 stars but when it comes to if it works I'll give it a 1 star my milk production did not increase as a matter of fact it dried up in less than a month after starting these cookies

★☆☆☆☆ **Not worth it**
Reviewed in the United States on June 4, 2025
Style: Oatmeal Chocolate Chip | Size: 10 Pack | **Verified Purchase**

These did not help with my milk supply what so ever and were not very good

★★★☆☆ **No noticeable impact on milk supply**
Reviewed in the United States on June 25, 2025
Style: Oatmeal Chocolate Chip | Size: 10 Pack | **Verified Purchase**

The cookies taste good but they didn't help with my supply

★★☆☆☆ **Eh**
Reviewed in the United States on July 26, 2025
Style: Oatmeal Chocolate Chip | Size: 10 Pack | **Verified Purchase**

I honestly wasn't really a fan of these . I didn't notice a difference in my milk supply and they are very dry .

★★★☆☆ **No difference**
Reviewed in the United States on July 26, 2025
Style: Lemon Bliss | Size: 10 Pack | **Verified Purchase**

These actually tasted really good but I just didn't see any difference in my milk production.

★★☆☆☆ **Doesn't work**
Reviewed in the United States on July 27, 2025
Style: Oatmeal Chocolate Chip | Size: 10 Pack | **Verified Purchase**

They don't work for milk production but I gave it a 2 star for taste.... the most expensive pack of cookies you'll enjoy but that's about it

★☆☆☆☆ **No improvement + bad taste**
Reviewed in the United States on August 16, 2025
Style: Oatmeal Chocolate Chip | Size: 10 Pack | **Verified Purchase**

Made no difference in Milk production and taste awful

★★☆☆☆ **Didn't work for me**
Reviewed in the United States on September 11, 2025
Style: Oatmeal Chocolate Chip | Size: 10 Pack | **Verified Purchase**

Haven't noticed any increase in milk supply. The cookies taste great. I love them but they haven't increased my milk supply at all. I'm gonna try them for a few more days and see. But I've had it for 10 days already and no difference. For the price, I had hoped it actually worked.

★☆☆☆☆ **Do Not Waste Your Time Does not work**
Reviewed in the United States on September 25, 2025
Style: Oatmeal Chocolate Chip | Size: 10 Pack | **Verified Purchase**

If I could sue Munchkin I totally would. For one this product did NOT increase my milk supply. It was totally a waste of money. I also seen the same product in Walmart for much cheaper for $17 instead of $22. I wouldn't recommend as a milk booster. You'd be better off making your own cookies with oats and all the other good stuff I feel that really aren't in this product. At least I tried it and I know that it did Not work. Complete 0/10. I should've known by the brand name that it wasn't going to work. DO NOT WASTE YOUR MONEY OR TIME. THERE ARE OTHER PRODUCTS THAT ACTUALLY WORK..

★★★☆☆ **Doesn't help inc milk**
Reviewed in the United States on October 2, 2025
Style: Oatmeal Chocolate Chip | Size: 10 Pack | **Verified Purchase**

Been eating them for almost 3 weeks and doesn't help with milk production. Tastes really good tho and end up eating as a snack just to eat them.

25

CLASS ACTION COMPLAINT

58.    Defendants have been manufacturing, distributing, and selling the Lactation Cookies for approximately ten years and knew or should have known, prior to distributing the Lactation Cookies into the consumer marketplace, that the Lactation Cookies fail to conform to Defendants' Milk Production Representations and other lactation focused representations, and do not increase milk supply and production any more than a regular, less expensive cookie without the same or similar representations. Nonetheless, in order to garner market share and capitalize on consumer demand for nursing support products and foods, Defendants continue to distribute the materially misleading Lactation Cookies into the consumer marketplace.

## VI.    *Defendants' Materially Misleading Advertising Directly Causes Consumer Financial Injury*

59.    As the entities responsible for the development, manufacturing, packaging, labeling, advertising, distribution and sale of the Products, Defendants knew or should have known that the Products are deceptively portrayed as capable of increasing milk supply and production in nursing mothers upon consumption more than other significantly less expensive cookies.

60.    Defendants also knew or should have known that Plaintiffs and other consumers, in purchasing the Products, would rely on Defendants' Milk Production Representations and other lactation focused claims. Nonetheless, Defendants deceptively advertise the Products in order to mislead consumers and gain an advantage over competitors that do not use deceptive lactation claims.

61.    No reasonable person would pay for and use the Products at the current market price if they knew that the Products do not increase milk supply and production in nursing mothers more than other, significantly less expensive cookies that do not make the same claims. If consumers knew the truth, the price of Defendants' Lactation Cookies would crater. Moreover, if consumers knew the truth, they would have paid significantly less for the Lactation Cookies. Thus, the economic injury here is the price premium attributable to the Milk Production Representations and other misleading lactation focused representations on and about the Lactation Cookies.

CLASS ACTION COMPLAINT

**NO ADEQUATE REMEDY AT LAW**

62.     Plaintiffs seek restitution if monetary damages are not available. Indeed, restitution under California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL") can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Prod. Co.,* 23 Cal. 4th 163, 177 (2000) (Restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."); *Gutierrez v. Wells Fargo Bank, NA,* 589 F. App'x 824, 827 (9th Cir. 2014) (same); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 661 (1993) ("In a suit arising under Business and Professions Code section 17200 et seq., the court 'is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action.'").

63.     But even if damages were available, such relief would not be adequate to address the injuries suffered by Plaintiffs and the putative Classes. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. *Cortez*, 23 Cal.4th at 180. Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.,* 150 Cal. App. 4th 42, 68 (2007), as modified (Apr. 24, 2007) (noting that restitution is available even in situations where damages may not be available). Plaintiffs and the putative Classes seek monetary and nonmonetary relief allowed by law, including restitution stemming from Defendants' unfair, unlawful and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief and other appropriate equitable relief.

64.     As to injunctive relief, there is no question that Plaintiffs Quintana, Lopez, and Fassbinder lack an adequate remedy at law. Whereas money damages are available for past harm, Plaintiffs Quintana, Lopez, and Fassbinder's claims for injunctive relief seek to change Defendants' ongoing deceptive conduct (i.e., to prevent future harm). The Ninth Circuit has held that plaintiffs are permitted to seek injunctive relief for future harm, even if the plaintiff seeks money damages for past harm. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (finding that "[i]njunctive relief is not at issue" as to an adequate remedy at law).

CLASS ACTION COMPLAINT

## **FED. R. CIV. P. 9(b) ALLEGATIONS**

65.     Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Although Defendants are in the best position to know what content they placed on their Lactation Cookies' packaging, their website, their authorized retailers' websites, and in their other marketing materials during the relevant class period, to the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

66.     **WHO**: Defendants made material misrepresentations of fact, through their Milk Production Representations and other lactation focused claims.

67.     **WHAT**: Defendants' conduct here was, and continues to be, fraudulent because they misrepresented the Lactation Cookies to be specialty products that increase milk production in nursing mothers upon consumption more than other significantly less expensive cookies without the same or similar representations. Defendants, through their employees, representatives, authorized retailers, and all others acting on their behalf, made affirmative misrepresentations to Plaintiffs and consumers at the time of purchase.

68.     **WHEN**: Defendants made these material misrepresentations during the Class Period, including at the time Plaintiffs and other consumers purchased the Lactation Cookies. Plaintiffs and other consumers purchased the Lactation Cookies during the Class Period.

69.     **WHERE**: Defendants' Milk Production Representations and other lactation focused claims were made on the Lactation Cookies' packaging, Defendants' website representations, their authorized retailers' websites, and/or in their other marketing materials.

70.     **HOW/WHY**: Defendants' representations are misleading because the Lactation Cookies do not increase milk supply and production in nursing mothers upon consumption more than other significantly less expensive cookies without the same or similar representations. Defendants engaged in this fraudulent scheme, including their material misrepresentations detailed herein, for the express purpose of inducing Plaintiffs, and all reasonable consumers, to purchase and pay a price premium for the Lactation Cookies.

28

Defendants profited and continue to profit by selling the Lactation Cookies to many thousands of consumers.

71.     **INJURY**: Plaintiffs and consumers purchased the Lactation Cookies when they otherwise would not have absent Defendants' Milk Production Representations and other lactation focused representations, and alternatively paid a price premium, which is more than they would have paid, absent such misrepresentations.

**CLASS ACTION ALLEGATIONS**

72.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23 (the "Rules" or "Rule") and all other applicable laws and rules, individually, and on behalf of all members of the following Classes (collectively the "Classes"):

**Nationwide Class**
All persons who, while in the United States and within the applicable statute of limitations period, purchased one or more of the Products for personal, family, or household purposes ("Nationwide Class").

**California Class**
All persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more of the Products for personal, family, or household purposes ("California Class").

**New York Class**
All persons who, while in the state of New York and within the applicable statute of limitations period, purchased one or more of the Products for personal, family, or household purposes ("New York Class").

**Illinois Class**
All persons who, while in the state of Illinois and within the applicable statute of limitations period, purchased one or more of the Products for personal, family, or household purposes ("Illinois Class") (together with the Nationwide Class, the California Class, and the New York Class, the "Classes").

73.     Plaintiffs reserve the right to amend the foregoing Class definitions if discovery or further investigation reveals that the Classes should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

74.     The following people and entities are excluded from the classes: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants,

29

Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

75. The action is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

***Numerosity***

76. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are likely at least tens of thousands of class members. Class members can be identified through Defendants' sales records, third-party sale records, and public notice.

***Predominance of Common Questions***

77. Common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Class. Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' misconduct detailed at length in this Complaint.

78. Specifically, common questions of law and fact include, without limitation:

(1) whether Defendants made false or misleading statements of fact in their labeling and advertising of the Products;

(2) whether reasonable consumers would rely upon Defendants' labeling and advertising of the Products;

(3) whether Defendants knew or should have known their representations were false or misleading;

(4) whether certification of any Class is appropriate under Rule 23;

CLASS ACTION COMPLAINT

(5) whether Defendants violated California's consumer protection statutes, New York General Business Law §§ 349 and 350, and the Illinois Consumer Fraud and Deceptive Business Practice Act; and

(6) damages needed to reasonably compensate Plaintiffs and the proposed Classes.

**Typicality & Adequacy**

79.     Plaintiffs' claims are typical of the proposed Classes. Like the proposed Classes, Plaintiffs purchased the Products. Moreover, there are no conflicts of interest between Plaintiffs and the Classes.

**Superiority**

80.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**Declaratory and Injunctive Relief**

81.     Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Defendants have acted or refused to act on grounds generally applicable to Plaintiffs Quintana, Lopez, Fassbinder and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. Unless a class-wide injunction is issued, Defendants will continue to label, advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Classes will continue to be misled, harmed, and denied their rights under the law.

**CLAIMS**
**First Cause of Action**
**Violation of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code § 17500, _et seq._**
**(_On behalf of the Nationwide Class, and in the alternative, on behalf of Plaintiff Quintana, Plaintiff Lopez, and the California Class_)**

82.     Plaintiffs repeat the allegations contained in paragraphs 1-81 above as if fully

31

set forth herein.

83.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants pursuant to California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*. In the alternative, Plaintiffs Quintana and Lopez bring this cause of action on behalf of themselves and members of the California Class.

84.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public... in any advertising device... or in any other manner or means whatever, including over the Internet, any statement, concerning... personal property or services... which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

85.     Defendants have represented and continue to represent to the public, including Plaintiffs and members of the proposed Nationwide Class, through their deceptive Milk Production Representations and other lactation focused claims, that the Lactation Cookies have the unique quality of being able to increase milk supply and production in nursing mothers upon consumption, more than ordinary, significantly less expensive cookies without the same or similar representations. However, this is not the case. Because Defendants have disseminated misleading information regarding the Products, and Defendants knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendants have violated the FAL.

86.     As a result of Defendants' false advertising, Defendants have and continue to unlawfully obtain money from Plaintiffs and members of the Nationwide Class. Plaintiffs therefore request that the Court cause Defendants to restore this fraudulently obtained money to Plaintiffs and members of the proposed Nationwide Class, to disgorge the profits Defendants made on these transactions, and Plaintiffs Quintana, Lopez, and Fassbinder seek to enjoin Defendants from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs and members of the proposed Nationwide Class may be irreparably harmed and/or denied an effective and complete remedy.

CLASS ACTION COMPLAINT

**Second Cause of Action**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq.***
(*On behalf of the Nationwide Class, and in the alternative, on behalf of Plaintiff Quintana, Plaintiff Lopez, and the California Class*)

87.    Plaintiffs repeat the allegations contained in paragraphs 1-81 above as if fully set forth herein.

88.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*. In the alternative, Plaintiffs Quintana and Lopez bring this cause of action on behalf of themselves and members of the California Class.

89.    The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiffs and members of the Nationwide Class constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

90.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have...." By using the Milk Production Representations and other lactation focused claims on the labeling and advertising of the Products, Defendants have represented and continue to represent that the Products have characteristics (i.e., have the unique quality of being able to increase milk supply and production in nursing mothers upon consumption more than other significantly less expensive cookies without the same or similar representations) that they do not have. Therefore, Defendants have violated section 1770(a)(5) of the CLRA.

91.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By using the Milk Production Representations and other lactation focused claims on the labeling and advertising of the Products, Defendants have represented and continue to represent that the Lactation Cookies are of a particular standard, quality, or grade that they do not meet, as described above. Therefore, Defendants have violated section 1770(a)(7) of the CLRA.

92.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with

33

intent not to sell them as advertised." By using the Milk Production Representations and other lactation focused claims on the labeling and advertising of the Lactation Cookies, and not delivering Lactation Cookies that are able to increase milk supply and production in nursing mothers upon consumption more than other significantly less expensive cookies without the same or similar representations, Defendants have advertised the Products with characteristics they intended not to provide, or knew they could not guarantee, to consumers. As such, Defendants have violated section 1770(a)(9) of the CLRA.

93.    At all relevant times, Defendants have known or reasonably should have known that the Milk Production Representations and other lactation focused claims on and about the Products are deceptive, and that Plaintiffs and other members of the Nationwide Class would reasonably and justifiably rely on these representations when purchasing the Products. Nonetheless, Defendants deceptively advertise the Products as such in order to deceive consumers into purchasing the Products.

94.    Plaintiffs and members of the Nationwide Class have justifiably relied on Defendants' misleading representations when purchasing the Products. Moreover, based on the materiality of Defendants' misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiffs and members of the Nationwide Class.

95.    Plaintiffs and members of the Nationwide Class have suffered and continue to suffer injuries caused by Defendants because they would have paid significantly less for the Products, or would not have purchased them at all, had they known the truth that the Products do not have the unique quality of being able to increase milk supply and production in nursing mothers upon consumption more than other significantly less expensive cookies without the same or similar representations.

96.    Under Cal. Civ. Code § 1780(a), Plaintiffs Quintana, Lopez, and Fassbinder and Nationwide Class members seek injunctive relief for Defendants' violations of the CLRA.

97.    On February 16, 2026, Plaintiffs Quintana and Lopez, on behalf of themselves and all other consumers nationwide, mailed notice to Defendants of their CLRA violations pursuant to Cal. Civ. Code § 1782. Defendants have not agreed to correct the problem for

34

Plaintiffs and for each member of the Nationwide Class within 30 days of receipt of the notice letter. Thus, Plaintiffs and the Nationwide Class seek all monetary relief allowed under the CLRA, including actual damages and punitive damages.

98.    Pursuant to Cal. Civ. Code § 1780(d), a declaration of venue is attached to this Complaint.

**Third Cause of Action**
**Violation of California's Unfair Competition Law**
**California Business & Professions Code § 17200, *et seq.***
***(On behalf of the Nationwide Class, and in the alternative, on behalf of Plaintiff Quintana, Plaintiff Lopez, and the California Class)***

99.    Plaintiffs repeat the allegations contained in paragraphs 1-81 above as if fully set forth herein.

100.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. In the alternative, Plaintiffs Quintana and Lopez bring this cause of action on behalf of themselves and members of the California Class.

101.    The UCL provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising...."

102.    Unlawful Prong: Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendants' Milk Production Representations and other lactation focused claims are "unlawful" as they violate the CLRA and FAL. As a result of Defendants' unlawful business acts and practices, Defendants have unlawfully obtained money from Plaintiffs and members of the proposed Nationwide Class.

103.    Unfair Prong: Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendants' conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Products' labeling and advertising. Deceiving

CLASS ACTION COMPLAINT

consumers into believing they will receive Products that are able to increase milk supply and production in nursing mothers upon consumption more than other cookies is of no benefit to consumers, especially when they may pay a premium for this assurance. The practice harms consumer trust and fair competition. Therefore, Defendants' conduct was and continues to be "unfair." As a result of Defendants' unfair business acts and practices, Defendants have and continue to unfairly obtain money from Plaintiffs and members of the proposed Nationwide Class.

104. Fraudulent Prong: Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendants' conduct here was and continues to be fraudulent because their representations have the effect of deceiving consumers into believing the Products had the unique quality of being able to increase milk supply and production in nursing mothers upon consumption more than other significantly less expensive cookies without the same or similar representations. Because Defendants misled Plaintiffs and members of the Classes about the Products, Defendants' conduct was "fraudulent." As a result of Defendants' fraudulent business acts and practices, Defendants have and continue to fraudulently obtain money from Plaintiffs and members of the Nationwide Class.

105. Plaintiffs and the Nationwide Class could not have reasonably avoided this deception and injury.

106. Defendants' conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

107. Defendants' conduct violated the public policy against false and misleading labeling and advertising, which is tethered to the CLRA and the FAL.

108. For all prongs, Defendants' misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on the misrepresentations when purchasing the Products. In addition, class reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

109. Defendants' misrepresentations were a substantial factor in Plaintiffs' purchase decision and the purchase decision of Class members.

110. Plaintiffs and the Nationwide Class were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the Products, or would have paid less for them, if they had known the truth about the Products' inability to increase milk supply and production in nursing mothers beyond a traditional cookie.

111. Plaintiffs request that the Court cause Defendants to restore this unlawfully, unfairly, and fraudulently obtained money to them and members of the proposed Nationwide Class, to disgorge the profits Defendants made on these transactions, and Plaintiffs Quintana, Lopez, and Fassbinder seek to enjoin Defendants from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs and members of the proposed Nationwide Class may be irreparably harmed and/or denied an effective and complete remedy.

**Fourth Cause of Action**
**Violation of New York General Business Law § 349 ("GBL")**
(*On behalf of Plaintiff Ether and the New York Class*)

112. Plaintiff Ether repeats the allegations contained in paragraphs 1-81 above as if fully set forth herein.

113. Plaintiff Ether brings this claim individually and on behalf of the members of the proposed New York Class against Defendants.

114. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

115. The conduct of Defendants alleged herein constitutes "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff Ether and the New York Class members seek monetary damages.

116. Defendants misleadingly advertised and marketed their Products to consumers through the representations that their Products are unique lactation cookies that will increase milk supply and production in nursing mothers upon consumption, more than ordinary, significantly less expensive cookies without the same or similar representations. However, this is false.

117. Defendants' improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff Ether and the New York Class to purchase and pay a

CLASS ACTION COMPLAINT

premium for the Products when they otherwise would not have.

118.    Plaintiff Ether and the New York Class have been injured inasmuch as they paid a premium for Products that do not increase milk supply and production in nursing mothers upon consumption, more than ordinary, significantly less expensive cookies without the same or similar representations. Had they known the truth about the Products, Plaintiff Ether and the New York Class would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiff Ether and the New York Class received less than what they bargained and/or paid for.

119.    Defendants made their untrue and/or misleading statements willfully, wantonly and with reckless disregard for the truth.

120.    As a result of Defendants' unlawful deceptive acts and practices, Plaintiff Ether and the New York Class are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest and attorneys' fees and costs.

**Fifth Cause of Action**
**Violation Of New York General Business Law § 350 ("GBL")**
(*On behalf of Plaintiff Ether and the New York Class*)

121.    Plaintiff Ether repeats the allegations contained in paragraphs 1-81 above as if fully set forth herein.

122.    Plaintiff Ether brings this cause of action on behalf of herself and members of the New York Class.

123.    New York General Business Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

GBL § 350-a(1) provides, in part, as follows:

The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.   In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device,

38

CLASS ACTION COMPLAINT

sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. . .

124.   Defendants' naming and advertising of the Products misrepresent that the Products increase milk supply and production in nursing mothers upon consumption, more than ordinary, significantly less expensive cookies without the same or similar representations. These are materially misleading representations.

125.   Plaintiff Ether and the New York Class members have been injured inasmuch as they relied upon the naming and advertising of the Products and paid a premium for products that do not increase milk supply and production in nursing mothers upon consumption, more than ordinary, significantly less expensive cookies without the same or similar representations. Accordingly, Plaintiff Ether and the New York Class members received less than what they bargained and/or paid for.

126.   Defendants made the foregoing untrue and/or misleading representations willfully, wantonly, and with reckless disregard for the truth.

127.   As a result of Defendants' unlawful and deceptive representations, Plaintiff Ether and the New York Class are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**Sixth Cause of Action**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**("ICFA"), 815 ILCS 505/1, *et seq.***
**(*On behalf of Plaintiff Fassbinder and the Illinois Class*)**

128.   Plaintiff Fassbinder repeats the allegations contained in paragraphs 1-81 above as if fully set forth herein.

129.   Plaintiff Fassbinder brings this claim individually and on behalf of the members of the Illinois Class.

130.   As alleged herein, Defendants misrepresented that the Products increase milk

39

CLASS ACTION COMPLAINT

supply and production in nursing mothers beyond a traditional cookie without the same or similar lactation claims.

131.    Plaintiff Fassbinder and other Illinois consumers relied on the Milk Production Representations, reasonably believing the Lactation Cookies they purchased would increase milk supply and production in nursing mothers beyond a traditional cookie without the same or similar lactation claims. However they do not.

132.    Defendants' false and deceptive Milk Production Representations are material in that they influence consumer purchasing decisions.

133.     Plaintiff Fassbinder and the Illinois Class were materially misled as a result. Plaintiff Fassbinder and the Illinois Class members would not have purchased the Products or paid as much if the true facts had been known about the Products. As a result, they suffered damages and are entitled to all remedies available under the ICFA.

**Seventh Cause of Action**
**Breach of Implied Warranties**
**Cal. Com. Code § 2314**
(*On behalf of Plaintiff Quintana, Plaintiff Lopez, and the California Class*)

134.    Plaintiffs Quintana and Lopez repeat the allegations contained in paragraphs 1-81 above as if fully set forth herein.

135.    Plaintiffs Quintana and Lopez bring this claim individually and on behalf of the members of the California Class against Defendants for breach of implied warranty.

136.    California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

137.    California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as... (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

138.    California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as... fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314(2)(c).

CLASS ACTION COMPLAINT

139. Defendants are merchants with respect to the sale of the Lactation Cookies. Therefore, a warranty of merchantability is implied in every contract for sale of the Lactation Cookies to California consumers.

140. By advertising with the Milk Production Representations and other lactation focused claims on the labeling of the Products, Defendants made an implied promise that the Lactation Cookies increase milk supply and production in nursing mothers beyond a traditional cookie without the same or similar lactation claims. However, the Lactation Cookies have not "conformed to the promises... made on the container or label" because the Lactation Cookies do not increase milk supply and production in nursing mothers upon consumption more than other significantly less expensive cookies without the same or similar lactation claims.

141. Moreover, under Cal. Com. Code § 2314(2)(c) the Products are not fit for their ordinary purpose of increasing milk supply and production in nursing mothers beyond a traditional cookie without the same or similar lactation claims.

142. As such, Plaintiffs Quintana and Lopez and other California consumers did not receive the goods as impliedly warranted by Defendants to be merchantable. Therefore, the Lactation Cookies are not merchantable under California law and Defendants have breached their implied warranty of merchantability in regard to the Products.

143. If Plaintiffs Quintana and Lopez and members of the California Class had known that the Milk Production Representations and other lactation focused claims were misleading and that the Products did not and could not increase milk supply and production in nursing mothers beyond a traditional cookie, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiffs Quintana and Lopez and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

144. On February 16, 2026, Plaintiffs Quintana and Lopez notified Defendants of their breach of warranty by way of a notice letter outlining the foregoing allegations.

145. Privity with Defendants is not required here for Plaintiffs and the California Class because (1) the Products are foodstuff; and (2) Plaintiffs and the California Class are the

41

CLASS ACTION COMPLAINT

intended end-consumers of the Products and the third party beneficiaries of the sale of the Products from Defendants to retailers of the Product (e.g., Target and Walmart).

**Eighth Cause of Action**
**Quasi Contract/Unjust Enrichment/Restitution**
***(On behalf of the Nationwide Class, and in the alternative, on behalf of Plaintiff Quintana,***
***Plaintiff Lopez and the California Class, on behalf of***
***Plaintiff Ether and the New York Class,***
***and on behalf of Plaintiff Fassbinder and the Illinois Class)***

146.    Plaintiffs repeat the allegations contained in paragraphs 1-81 above as if fully set forth herein.

147.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants for unjust enrichment. In the alternative, Plaintiff Quintana and Plaintiff Lopez bring this cause of action on behalf of themselves and members of the California Class, Plaintiff Ether brings this cause of action on behalf of herself and members of the New York Class, and Plaintiff Fassbinder brings this cause of action on behalf of herself and members of the Illinois Class.

148.    As alleged herein, Defendants have intentionally made misleading representations regarding the ability of the Products to increase milk supply and production in nursing mothers to Plaintiffs and members of the Nationwide Class to induce them to purchase the Products. Plaintiffs and members of the Nationwide Class have reasonably relied on the misleading representations and have not received all of the benefits and promises made by Defendants. Plaintiffs and members of the proposed Nationwide Class have therefore been induced by Defendants' misleading and deceptive representations about the Lactation Cookies, and paid more money to Defendants for the Lactation Cookies than they otherwise would and/or should have paid.

149.    Plaintiffs and members of the Nationwide Class have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiffs and members of the proposed Nationwide Class.

150.    The monies received were obtained under circumstances that were at the

42

expense of Plaintiffs and members of the Nationwide Class —i.e., Plaintiffs and members of the proposed Nationwide Class did not receive the full value of the benefits conferred upon Defendants due to the misrepresentations about the Lactation Cookies' ability to increase milk supply and production in nursing mothers more than other significantly less expensive cookies. Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them.

151.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and members of the Nationwide Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

### Ninth Cause of Action
**Fraud**
***(On behalf of Plaintiff Quintana, Plaintiff Lopez and the California Class,
on behalf of Plaintiff Ether and the New York Class,
and on behalf of Plaintiff Fassbinder and the Illinois Class)***

152.    Plaintiffs repeat the allegations contained in paragraphs 1-81 above as if fully set forth herein.

153.    Plaintiff Quintana and Plaintiff Lopez bring this cause of action on behalf of themselves and members of the proposed California Class, Plaintiff Ether brings this cause of action on behalf of herself and members of the proposed New York Class, and Plaintiff Fassbinder brings this cause of action on behalf of herself and members of the Illinois Class against Defendants for fraud.

154.    As alleged herein, Defendants made material representations to Plaintiffs and the California Class, New York Class and Illinois Class members through the Milk Production Representations and other lactation focused claims in order to induce Plaintiffs and the California Class, New York Class, and Illinois Class members to purchase the Lactation Cookies.

155.    As alleged in detail herein, Defendants knew these representations were false and misleading but nevertheless made such representations through the labeling, marketing, and

43

advertising of the Products. Defendants' knowledge is further supported by the 2023 randomized controlled trial specifically testing the Products, consumer complaints both before and during the Class Period concerning the Products' lack of efficacy, Defendants' long-running sale and marketing of lactation products, and Defendants' subsequent changes to certain challenged label statements.

156.    In reliance on these representations, Plaintiffs and the California Class, New York Class, and Illinois Class members were induced to, and did, pay monies (a price premium) to purchase the Lactation Cookies.

157.    Had Plaintiffs and the California Class, New York Class, and Illinois Class members known the truth about the Lactation Cookies they would not have purchased the Lactation Cookies or paid less than they did.

158.    As a result of the fraudulent conduct of Defendants, Plaintiffs and the California Class, New York Class, and Illinois Class members paid monies (a price premium) to Defendants, to which Defendants are not entitled, and have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A.    Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Name Plaintiffs as Class Representative of the Classes;

C.    Name Plaintiffs' counsel as Class Counsel for the Classes;

D.    Award damages, including compensatory, punitive, and statutory damages to Plaintiffs and the Classes in an amount to be determined at trial;

E.    Award restitution and all other equitable monetary relief available by law;

F.    Plaintiffs Quintana, Lopez, and Fassbinder seek to permanently enjoin Defendants from engaging in the wrongful and unlawful conduct alleged herein;

G.    Award Plaintiffs and the Classes their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

CLASS ACTION COMPLAINT

H.    Award Plaintiffs and the Classes pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

I.    Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs, on behalf of the Classes, demand a trial by jury on all issues so triable.

DATED: June 15, 2026                    Respectfully submitted,


**TREEHOUSE LAW, LLP**

By: /s/ Benjamin Heikali
Benjamin Heikali (Cal. Bar No. 307466)
bheikali@treehouselaw.com
Ruhandy Glezakos (Cal. Bar No. 307473)
rglezakos@treehouselaw.com
Joshua Nassir (Cal. Bar No. 318344)
jnassir@treehouselaw.com
TREEHOUSE LAW, LLP
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948


**ABIRI LAW, PC**

By: /s/ Robert Abiri
Robert Abiri (SBN 238681)
rabiri@abirilaw.com
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
t. 949.459.2133
f. 949.534.4367


*Attorneys for Plaintiffs and the Putative Classes*

CLASS ACTION COMPLAINT

## Venue Declaration Pursuant to Cal. Civ. Code 1780(d)

I, Bianca Albertina Quintana, declare as follows:

1.      I am the named Plaintiff in the above-captioned action and a citizen of the State of California. I have personal knowledge of the facts set forth in this declaration, and am competent to testify to the same. The matters set forth herein are true and correct to the best of my knowledge and belief.

2.      I believe that the Northern District of California is the proper place for trial of this case because I reside in and purchased the challenged Products in this district.

I declare under penalty of perjury that the foregoing is true and correct, executed on    05/20/2026    in Hayward, California.

_____
Bianca Albertina Quintana

The signed document can be validated at https://app.vinesign.com/Verify