United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BIANCA ALBERTINA QUINTANA, et al.,
Plaintiffs,

v.

MUNCHKIN, INC., et al.,
Defendants.

Case No. 26-cv-05822-JSC

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 15

Plaintiffs, on behalf of a putative class, sue Defendants Munchkin, Inc. and its parent company Why Brands, Inc., for misleading labeling and advertising statements on Munchkin's Lactation Cookie Bites ("Lactation Cookies" or "Products"). (Dkt. No. 1.)[1] Plaintiffs assert nine claims under California, New York, and Illinois consumer protection laws and for breach of implied warranty, unjust enrichment, and fraud, on behalf of a nationwide class and three state classes. (*Id.* ¶¶ 72, 82-158.) Before the Court is Defendants' motion to dismiss. (Dkt. No. 15.) Having carefully considered the parties' submissions, and with the benefit of oral argument on November 19, 2026, the Court DENIES in part and GRANTS in part Defendants' motion. Plaintiffs fail to sufficiently allege the inadequacy of their legal remedies, but they otherwise plausibly allege their Article III standing and their various state law claims.

**COMPLAINT ALLEGATIONS**

Munchkin and its parent company, Why Brands, manufacture, market, and sell Munchkin Lactation Cookie Bites. (Dkt. No. 1 ¶¶ 1, 18.) The Lactation Cookies are offered in at least seven flavors, including Lemon, Lemon Bliss, Oatmeal Chocolate Chip, Chocolate Salted Carmel,

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Oatmeal Raisin, Classic Chocolate Chip, and Caramel. (*Id.* ¶ 1 n.1.)

Plaintiffs are four consumers who each purchased the Lactation Cookies. Plaintiff Quintana purchased Oatmeal Chocolate Chip Lactation Cookies from a Target store in California in or around April 2025. (*Id.* ¶ 7.) Plaintiff Lopez purchased Chocolate Salted Caramel Lactation Cookies from a Walmart store in California in or around early 2025. (*Id.* ¶ 10.) Plaintiff Ether purchased Oatmeal Chocolate Chip Lactation Cookies through Amazon.com on September 29, 2024, while residing in New York, and Plaintiff Fassbinder purchased the same flavor through Amazon.com on July 16, 2024, while residing in Illinois. (*Id.* ¶ 13-14.)

In purchasing the Lactation Cookies, each Plaintiff "read and relied on the Product's packaging claims," including but not limited to "Milkmakers," "Lactation Cookie Bites," "With Ingredients Traditionally Used To Support Breast Milk Supply," "Lactation Consultant Recommended" and "#1 Lactation Snack Brand." (*Id.* ¶ 7-16.) The first three statements ("Milkmakers," "Lactation Cookie Bites," and "With Ingredients Traditionally Used to Support Breast Milk Supply") are featured or were previously featured on the front label of every flavor of Lactation Cookies. (*Id.* ¶ 38.) The other two front-label statements ("Lactation Consultant Recommended" and "#1 Lactation Snack Brand") "reinforce" those core claims on "most" flavors. (*Id.*)

Plaintiffs allege these statements (the "Milk Production Representations"), taken together, mislead reasonable consumers to believe the cookies will "increase a mother's supply of breast milk upon consumption more than an ordinary, significantly less expensive cookie," when the cookies do not actually do so. (*Id.* ¶¶ 7-16, 38.) Plaintiffs point to results from a randomized controlled trial published in the American Journal of Clinical Nutrition in 2023 ("the AJCN Study"), which found that the difference in milk production between lactating women eating Munchkin's Lactation Cookies for a month and lactating women eating conventional Famous Amos cookies for a month was not statistically significant. (*Id.* ¶ 42-44.) In fact, milk production increased *more* for the lactating women eating Famous Amos Cookies. (*Id.* ¶ 44.) The study thus concluded Munchkin's Lactation Cookies "fail[] to increase the milk supply and production of nursing mothers upon consumption any more than the less expensive Famous Amos cookies." (*Id.*

¶ 45.) Had Plaintiffs known this, they "would not have purchased the [Lactation Cookies] or would have paid significantly less for it." (*Id.* ¶ 7, 10, 13-14.) And, despite Defendants' misrepresentations, Plaintiffs would still purchase the Lactation Cookies, as advertised, "if they did in fact increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie." (*Id.*) But absent an injunction prohibiting Defendants' misleading labelling, Plaintiffs are "unable to rely with confidence on Defendants' advertising." (*Id.*)

Plaintiffs bring claims for violations of (1) California's False Advertising Law ("FAL"), (2) California's Consumers Legal Remedies Act ("CLRA"), (3) California's Unfair Competition Law ("UCL"), (4) New York's General Business Law § 349 ("GBL 349"), (5) New York's General Business Law § 350 ("GBL 350"), and (6) Illinois's Consumer Fraud and Deceptive Business Practices Act ("ICFA"), as well as claims for (7) breach of implied warranty of merchantability, (8) unjust enrichment, and (9) fraud. (*Id.* ¶¶ 82-158.) Plaintiffs seek to represent a nationwide class, as well as California, New York, and Illinois subclasses, and request damages, restitution, injunctive relief, and punitive damages. (*Id.* ¶ 72, at 44-45 (Prayer for Relief).)

## DISCUSSION

## I. STANDING

To establish standing sufficient to satisfy constitutional requirements, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).

### A. Injury-in-Fact

As a threshold matter, Defendants contend Plaintiffs lack Article III standing to pursue their claims because they fail to properly allege an injury in fact. The Court concludes Plaintiffs have pleaded sufficient facts at this stage of proceedings.

A "quintessential injury-in-fact" occurs when plaintiffs allege they "spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011). That is precisely what Plaintiffs do here. Plaintiffs each allege if they had

United States District Court
Northern District of California

"known" the Lactation Cookies did not increase a mother's breast milk supply "more than an ordinary, significantly less expensive cookie," they "would not have purchased the Product or would have paid significantly less for it." (Dkt. No. 1 ¶¶ 7, 10, 13-14.) Contrary to Defendants' assertions, Plaintiffs need not allege "the actual prices they paid, the prices of comparable nonlactation cookies, any but-for market price, or facts isolating a premium attributable to the challenged statements rather than to other product attributes." (Dkt. No. 15 at 14). Instead, consistent with controlling caselaw, a consumer adequately pleads Article III injury-in-fact if they allege they "paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so." *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1104 n.3 (9th Cir. 2013); *see also Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 872-73 (N.D. Cal. 2022); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018).

Defendants' citation to *Naimi v. Starbucks Corp.*, 798 F. App'x 67 (9th Cir. 2019), is inapposite. *Naimi* held that "[t]he bare recitation of the word 'premium' does not adequately allege a cognizable injury" under New York Law. *Id.* at 70. But Plaintiffs here allege significantly more than "the word 'premium'" in the underlying complaint. Plaintiffs sufficiently plead reliance when they allege they "read and relied on the Product's packaging claims," which led them to purchase the Lactation Cookies, "reasonably believing the Lactation Cookies would increase a mother's breast milk upon consumption more than an ordinary, significantly less expensive cookie without the same representations." (Dkt. No. 1 ¶¶ 6-7, 10, 13-14.) And by alleging they would "not have purchased" the Lactation Cookies "or would have paid significantly less for it" but for Defendants' misrepresentations, Plaintiffs plausibly allege economic injury. *See Zeiger*, 304 F. Supp. 3d at 846.

This is more than adequate to establish injury-in-fact for purposes of standing at the pleading stage.[2]

[2] Plaintiffs' allegations are also sufficient to establish statutory standing under the California, New York, and Illinois statutes at issue. *See Broussard v. Dole Packaged Foods, LLC*, No. 23-cv-03320-HSG, 2024 WL 1540221, at *4-5 (N.D. Cal. Apr. 8, 2024) (finding comparable allegations were sufficient to establish economic injury and reliance, and therefore statutory standing, under California's UCL, FAL, CLRA, and New York's GBL); *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 986-87 (N.D. Ill. 2013) (concluding plaintiff adequately alleged standing under the

**B. Substantially Similar Products**

Defendants further contend Plaintiffs cannot challenge the product labels on any Lactation Cookie flavors Plaintiffs did not purchase because Plaintiffs did not sufficiently allege the unpurchased flavors are substantially similar to the flavors they purchased.

"[A] plaintiff has Article III standing for an unpurchased product only when there is 'substantial similarity' between the purchased and unpurchased products at issue." *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 907 (N.D. Cal. 2021) (citing *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2015 WL 2125004, at *10 (N.D. Cal. May 6, 2015); *see also Graham v. Central Garden & Pet Co.*, No. 22-cv-06507-JSC, 2023 WL 2744391, at *6 (N.D. Cal. Mar. 30, 2023) ("'[A] plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.") (quoting *Miller v. Ghiradelli Chocolate Co.*, 912 F. Supp. 3d 861, 869 (N.D. Cal. 2012)); *Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492-BLF, 2014 WL 6657809, at *3 (N.D. Cal. Nov. 21, 2014). "Although the Ninth Circuit has not directly addressed 'substantial similarity' for purposes of consumer fraud-based class actions, district courts, driven by *Armstrong*, have taken a broad approach." *Cimoli*, 546 F. Supp. 3d at 907; *see Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001). Courts often "look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Figy v. Frito-Lay N. Am. Inc.*, 67 F. Supp. 3d 1075, 1083 (N.D. Cal. 2014).

"Consider[ing] the similarity of the claims and injuries flowing from the misrepresentations on each product," *Cimoli*, 546 F. Supp. 3d at 908, Plaintiffs allege sufficient similarity between the two Lactation Cookie flavors Plaintiffs purchased—Oatmeal Chocolate Chip and Chocolate Salted Caramel—and the five Lactation Cookies flavors Plaintiffs did not purchase—Lemon, Lemon Bliss, Oatmeal Raisin, Classic Chocolate Chip, and Caramel—to have

---

ICFA because plaintiff alleged he "would not have purchased the [product] and certainly would not have paid a premium price for the product" had he known the claims on the label were misrepresentations.")

standing to bring suit over the unpurchased products. Plaintiffs allege all seven flavors of Lactation Cookies make the same three core representations on the front label—"Milkmakers," "Lactation Cookie Bites," and "With Ingredients Traditionally Used to Support Breast Milk Supply"—which mislead consumers "whether read together or in isolation." (Dkt. No. 1 ¶ 38.) The statements express a "common theme," i.e., the cookies "will increase a mother's supply of breast milk more than a traditional cookie would." (*Id.*); *Michael v. Honest Co. Inc.*, No. 15-cv-07059-JAK-AGR, 2016 WL 8902574, *11 (C.D. Cal. Dec. 6, 2016) (concluding different products with varying representations were substantially similar because the representations all expressed a "common theme" the products were "natural"). Furthermore, every flavor shares the same key three ingredients—oats, brewer's yeast, and flax seed—which are all "ingredients traditionally used to support breast milk production." (Dkt. No. 1 ¶ 39); *See In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig*., No. 20-cv-03184-HSG, 2021 WL 3191733, at *2-3 (N.D. Cal. July 28, 2021) (holding the differences in ingredients were "immaterial" because every cleaner contained some "ingredients alleged to cause similar harm."); *Krommenhock v. Post Foods, LLC*, 255 F.Supp.3d 938, 969 (N.D. Cal. 2017) (immaterial differences in product ingredients do not defeat standing to sue for unpurchased products). And finally, every flavor inflicts the same injury: a price premium for a cookie that purportedly increases milk supply no more than an ordinary one. (Dkt. No. 1 ¶¶ 41, 56, 61); *See Cimoli*, 546 F. Supp. 3d at 908 (concluding the products were substantially similar "[c]onsidering the similarity of the claims and injuries flowing from the misrepresentations on each product"). The Court is not persuaded any minor distinctions in Lactation Cookie ingredients or label language are so materially different that Plaintiffs do not have standing to challenge the other five flavors of Lactation Cookies.

Defendants' motion to dismiss claims for the Products Plaintiffs did not purchase is therefore DENIED.

## II. FALSE OR MISLEADING STATEMENTS

Plaintiffs' claims are governed by the "reasonable consumer" standard, so Plaintiffs must plausibly allege "members of the public are likely to be deceived." *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (quotation marks and citation omitted) (applying

"reasonable consumer" standard to UCL, FAL, and CLRA claims); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998) (applying "reasonable consumer" standard to GBL §§ 349-350 claims); *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (applying "reasonable consumer" standard to UCL, FAL, CLRA, GBL §§ 349-350, and ICFA claims). However, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision [at the pleadings stage]." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007)). So, dismissal at the pleadings stage is not appropriate unless "the advertisement itself makes it impossible for the plaintiff to prove that a reasonable consumer is likely to be deceived." *See Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) (explaining dismissals of UCL, FAL, and CLRA claims at the pleadings stage are rare).

Plaintiffs' complaint alleges the Milk Production Representations, i.e., the statements Defendants placed on the labels of the Lactation Cookies, including "Milkmakers," "Lactation Cookie Bites," "With Ingredients Traditionally Used To Support Breast Milk Supply," reinforced by declarations such as "BRING ON THE MILK!" and "MORE MILK, PLEASE!," are "misleading" because they deceptively "lead reasonable consumers to believe the Lactation Cookies are specialized cookies that will increase a mother's supply of breast milk more than a traditional cookie would," when the Lactation Cookies do not actually do so. (Dkt. No. 1 ¶ 38.) Defendants' primary response is that "[P]laintiffs do not plead facts showing that any of these statements are literally false." (Dkt. No. 15 at 17.) Defendants further argue no reasonable consumer could read these "non-specific and generalized statements" to believe the cookies are "'scientifically established' to meet any objective standard" that they are more effective at increasing a mother's breast milk supply and production than ordinary cookies. (*Id.*) Defendants misconstrue the appropriate legal standard and mischaracterize Plaintiffs' allegations.

First, the California, New York, and Illinois consumer protection statutes implicated in this case prohibit advertising that is misleading, even when it is not literally false. *See Williams*, 552 F.3d at 938 (confirming California law prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood

or tendency to deceive or confuse the public.") (quoting *Kasky v. Nike, Inc.* 27 Cal.4th 939, 951 (2002)); *Beardsall*, 953 F.3d at 973 ("A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false."); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636-37 (2d Cir. 2018) (holding plaintiffs plausibly alleged a violation of New York's GBL §§ 349 and 350 because the product labels were misleading to a reasonable consumer even though the statements were factually true). Accordingly, even if the Milk Production Representations on the Lactation Cookie labels, such as "Milkmakers" and "With Ingredients Traditionally Used to Support Breast Milk Supply," are not "literally false," they can nonetheless mislead reasonable consumers in violation of the false advertising laws Plaintiffs identify.

Second, Plaintiffs do not allege each Milk Production Representation led reasonable consumers to believe "the Lactation Cookies have been rigorously tested and scientifically established" to be more effective at increasing a mother's breast milk supply and production than ordinary, less expensive cookies, as Defendants assert. (Dkt. No. 15 at 17.) Instead, Plaintiffs allege the cumulative effect of the challenged representations created a misleading impression that the Lactation Cookies were "specialized" to increase a mother's supply of breast milk more than a traditional cookie. (Dkt. No. 1 ¶ 38.); *see Williams*, 552 F.3d at 938-40 (holding the *combination* of Gerber's product name, fruit imagery, "fruit juice" statement, and nutritional representations could plausibly mislead reasonable consumers).

Drawing inferences in Plaintiffs' favor, a reasonable consumer could interpret the Milk Production Representations as communicating that the Lactation Cookies are "uniquely formulated" to increase breast milk supply beyond what an ordinary, significantly less expensive cookie could achieve. (Dkt. No. 1 ¶¶ 38-39.) District courts reached similar conclusions based on analogous allegations in *Johnson v. Gen. Mills, Inc.*, No. SA CV 10-00061 CJC (ANx), 2011 WL 13225105 (C.D. Cal. Mar. 3, 2011) and *Bailey v. Rite Aid Corp*., No. 18-cv-06926-YGR, 2019 WL 4260394 (N.D. Cal. Sept. 9, 2019). In *Johnson*, the district court concluded that labelling on General Mills' YoPlus yogurt, including the phrase "DIGESTIVE" in capital letters, the word "probiotics," and a green silhouette of a woman's body with a plus sign and various circles in the area of the woman's stomach, communicated a misleading message that eating Yo-Plus yogurt

aided digestive health more than eating normal yogurt. 2011 WL 13225105 at *2. In *Bailey*, the district court concluded a reasonable consumer could plausibly believe Rite Aid "rapid release" acetaminophen gelcaps would provide faster relief compared to traditional acetaminophen caplets because the traditional caplets were "sold at a lower price and d[id] not contain the "rapid release" language on the label." 2019 WL 4260394 at *6. Here, the advertising statements on the Lactation Cookies' labels, including but not limited to "Milkmakers," "Lactation Cookie Bites," and "With Ingredients Traditionally Used To Support Breast Milk Supply," all emphasize breast milk production. Assessed together, the statements could plausibly mislead a reasonable consumer to believe the Lactation Cookies would increase a nursing mother's breast milk supply and production more than ordinary, less expensive cookies without such representations, thereby deceiving the consumer.

That Defendants' packaging "expressly displays the key ingredients" in the Lactation Cookies does not alter the Court's analysis. (Dkt. No. 15 at 17.) On the contrary, because Defendants' labelling also associates the listed ingredients Defendants identify, including oats, brewer's yeast, and flax seed, with supporting increased breast milk production, the listed ingredients may even reinforce, and certainly do not dispel, the "misleading" message that the Lactation Cookies are specially formulated to increase breast milk production more than ordinary cookies. (*See* Dkt. No. 1 ¶ 39); *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. 2023) (explaining whether a back label ingredients list "can ameliorate any tendency of [a] label to mislead" depends on whether the "back label ingredients list ... conflict[s] with" or "confirm[s]" a front label claim.") (quoting *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (citation omitted)).

Defendants further assert Plaintiffs' "factual sources" do not "plausibly allege falsity" because Plaintiffs' sources do not "show" that the "implication" the Lactation Cookies increase breast milk production more than an ordinary cookie is, in fact, false or misleading.[3] (Dkt. No. 15

[3] The Court does not address the extent to which the Science-Based Medicine blog or the negative online consumer reviews support Plaintiffs' allegations as the AJCN study is sufficient to plausibly allege Defendants' Milk Production Representations are misleading.

at 18.) But at the motion to dismiss stage, complaints need not "show" anything. *Locklin v. StriVectin Operating Co., Inc.*, No. 21-cv-07967-VC, 2022 WL 867248, at *4 (N.D. Cal. Mar. 23, 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Indeed, whether the AJCN study cited in the complaint definitively proves Plaintiffs' claims "is not a dispute susceptible to resolution on a motion to dismiss." *Id.* Consequently, the Court may take judicial notice of the study because it is incorporated by reference into the complaint, *see Tunac v. United States*, 897 F.3d 1197, 1207 n.8 (9th Cir. 2018), but will not analyze its merit. *See Tubbs v. AdvoCare Int'l, L.P.*, 785 F. App'x 396, 397 (9th Cir. 2019) (stating in false labeling case: "We assume, without deciding, that the district court erred by evaluating the persuasiveness the report's final conclusions." *See Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992-93 (9th Cir. 2018) (per curiam) (holding that the persuasiveness of an admissible report by an expert is "for the fact-finder to decide").

Plaintiffs here allege consumers purchased the Lactation Cookies reasonably believing they are more effective at increasing milk production than ordinary cookies when they are not. The AJCN study Plaintiffs cite found that the difference in milk production between lactating women eating Munchkin's Lactation Cookies for a month and lactating women eating conventional Famous Amos cookies for a month was not statistically significant, and milk production actually increased more for the lactating women eating Famous Amos Cookies. (Dkt. No. 1 ¶ 42-44.) The study thus supports at least a plausible inference that Defendants' statements are misleading, i.e., the Lactation Cookies do not increase a nursing mother's breast milk production more than an ordinary cookie. And the study does not, in any way, "directly contradict[ ]" Plaintiffs' allegations. *Locklin*, 2022 WL 867248, at *4 ("The cited studies reference at least some of the chemicals identified in the complaint and purport to document their potentially harmful effects on coral reefs. Discovery may expose that those studies contain vital flaws, but it is enough for now that the studies do not plainly refute the allegations in the complaint."). Accordingly, as alleged, and together with Plaintiffs' other factual allegations, the AJCN study "nudge[s]" an inference of falsity "across the line from conceivable to plausible." *Graham*, 2023 WL 2744391, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Finally, Defendants contend the representations "Bring on the Milk!" "More Milk, Please!," and "We're here to support you in your journey to bring on the milk!" are "nonactionable puffery" because reasonable consumers would not understand them to be "anything more than generalized assertions of superiority." (Dkt. No. 15 at 22.) Not so. "A statement is considered puffery if the claim is *extremely unlikely* to induce consumer reliance." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (emphasis added). And in this case, the statements "Bring on the Milk!" "More Milk, Please!," and "We're here to support you in your journey to bring on the milk!" are assessed in combination with the other alleged front label misrepresentations. Contrary to Defendants' assertions, these statements "certainly contribute[d] …to the deceptive context of the packaging as a whole," lending further support to a reasonable consumer's belief the Lactation Cookies would increase breast milk production more than an ordinary cookie. *Williams*, 552 F.3d at 939 n.3; *see also Johnson*, 2011 WL 13225105, at *2 ("Even assuming General Mills is correct that some of the statements would themselves be non-actionable, they cannot be considered in isolation because they contribute to the [potentially] deceptive context of the packaging and marketing as a whole.") (internal quotation marks omitted).

* * *

Plaintiffs adequately allege Defendants' Milk Production Representations are misleading under California, New York, and Illinois consumer protection laws. The Court therefore DENIES Defendants' motion to dismiss on this ground.

## III. RULE 9(B)

Because five of Plaintiffs' claims sound in fraud,[4] they must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. To determine whether a claim sounding in fraud satisfies Rule 9(b), a district court considers whether the complaint alleges "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *United States ex rel. Anita Silingo v.*

[4] Counts I, II, III, VI, and IX.

*WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (cleaned up). Rule 9(b)'s particularity requirement exists "to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (cleaned up). For this reason, "Rule 9(b) 'may be relaxed as to matters within the opposing party's knowledge.'" *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)).

Defendants first argue Plaintiffs do not satisfy Rule 9(b) because the Complaint "does not identify which particular statements each plaintiff saw [and relied upon] before purchasing" the Lactation Cookies. (Dkt. No. 15 at 23.) The Complaint's allegations directly refute this assertion. Each Plaintiff expressly identifies the same five representations relied on when making a purchase: "Milkmakers," "Lactation Cookie Bites," "With Ingredients Traditionally Used To Support Breast Milk Supply," "Lactation Consultant Recommended," and "#1 Lactation Snack Brand." (Dkt. No. 1 ¶¶ 7, 10, 13-14.) This case is therefore distinct from *Kearns*, in which the plaintiff never alleged "what the … advertisements or other sales material specifically stated." 567 F.3d at 1125-26. Furthermore, each Plaintiff identifies the flavor of Lactation Cookie bought, where and when she bought it, and confirms she "would not have purchased the Product or would have paid significantly less for it" had she known the truth. (Dkt. No. 1 ¶¶ 7, 10, 13-14.) These detailed allegations satisfy Rule 9(b)'s requirement to plead the "who, what, when, where, and how" of the alleged misconduct.[5] *See LeGrand v. Abbott Laboratories*, 655 F. Supp. 3d 871, 895 (N.D. Cal. 2023) (finding Rule 9(b) satisfied where the plaintiff identified the product purchased, the purchase location and period, the specific label representations she relied upon, and why those representations were misleading). And ultimately, although Defendants contend more specificity is required, they do not argue they lack "notice of the particular misconduct" alleged or cannot "defend against the charge" or "prepare an adequate answer from the allegations." *See Kearns*,

[5] Contrary to Defendants' assertions, none of Plaintiffs' claims rely on Defendants' additional online statements on the Munchkin website and other retailer pages, which Plaintiffs do not all allege they have seen.

567 F.3d at 1124 (cleaned up). Plaintiffs' allegations as to "what" misleading statements Defendants made satisfy Rule 9(b).

Defendants also argue the Complaint fails to satisfy Rule 9(b) because it "lumps together Munchkin and [its parent company] Why Brands" and does not identify "any specific representations made by Why Brands." (Dkt. No. 15 at 24-25.) But "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam). Instead, Plaintiffs must "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Id.* at 765 (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)). Plaintiffs do so here. The Complaint alleges Why Brands "directs and controls its operations, including the manufacturing, advertising, labeling, sale and distribution of the Lactation Cookies nationwide," and Why Brands' Chief Brand Officer & Creative Director "manages brand design" and "operates out of Los Angeles County." (Dkt. No. 1 ¶ 18.) The Complaint also cites to Why Brands' leadership page, which describes the Chief Brand Officer & Creative Director as managing the public relations, social media, and brand design teams for Munchkin. (*Id.* ¶ 17 n.3.) Based on these facts, Plaintiffs allege "Why Brands, Inc.'s false and misleading labeling and advertising of the Lactation Cookies was … developed, conceived, reviewed, approved, and otherwise controlled from its California presence" and "[a]ll critical decisions regarding the labeling, marketing strategy, and promotion of the Lactation Cookies were coordinated, authorized, and disseminated" by Why Brands. (*Id.*) Taking all inferences in Plaintiffs' favor, the alleged facts support a reasonable inference Why Brands had a role in the Lactation Cookies' misleading branding and packaging, which forms the basis of this action. And there is "no flaw in a pleading" like this one "where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (internal quotations omitted). A complaint need only separate its allegations "when defendants engage in *different* wrongful conduct," which is not alleged here. *Id.*

Because Plaintiffs' allegations are sufficient to put Defendants on notice of the particular misconduct alleged, and the Complaint adequately identifies the role of both Munchkin and Why Brands in the misleading conduct, the Court does not dismiss Plaintiffs' Complaint under Rule 9(b).

## IV. REMEDIES

### A. Equitable Relief

"In seeking redress for a wrong, a litigant may obtain equitable or legal remedies. The 'traditional' equitable remedy is an injunction. The 'traditional' legal remedy is monetary damages." *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (cleaned up). As a matter of equitable jurisdiction, a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Here, Plaintiffs bring claims for equitable relief, at least in the alternative, under all nine causes of action. Notably, equitable relief is the only remedy available under the UCL.

Two forms of equitable relief Plaintiffs seek potentially implicate *Sonner*: restitution for past harm and injunctive relief for future harm. Defendants contend Plaintiffs fail to plead any claim for equitable relief because they fail to allege facts plausibly establishing their legal remedies are inadequate.

#### 1. Injunctive Relief

With respect to injunctive relief, Plaintiffs plausibly allege they lack an adequate legal remedy. Damages related to the Lactation Cookies Plaintiffs have already bought do not remedy the harm from Defendants continuing to use misleading marketing statements on those products. *See Warren v. Whole Foods Mkt. Cal., Inc.*, No. 21-cv-04577-EMC, 2022 WL 2644103, at *9 (N.D. Cal. July 8, 2022) ("[R]etrospective damages are not an adequate remedy for the prospective harm that injunctions are designed to prevent, and injunctive relief was not at issue in *Sonner* because the defendant only moved to dismiss the plaintiff's claims for restitution.... Because the injunctive relief that Plaintiffs request is prospective and their remedy at law, damages, is retrospective, their claim for an injunction does not appear to be barred by *Sonner*.") (cleaned up).

For example, Plaintiffs allege they would like to purchase the Lactation Cookies again but will not, absent an injunction, because they are "unable to rely with confidence" on Defendant's advertising of the Products. (Dkt. No. 1 ¶¶ 8, 11, 15-16.) This harm cannot be remedied by a future damages action because Plaintiffs cannot bring a lawsuit based on their decision *not* to purchase the Lactation Cookies. *See Cepelak v. HP Inc.*, No. 20-CV-02450-VC, 2021 WL 5298022, at *3 (N.D. Cal. Nov. 15, 2021).

Plaintiffs also establish Article III standing to pursue injunctive relief. To do so, a plaintiff must establish "an actual and imminent, not conjectural or hypothetical threat of future harm." *Davidson*, 889 F.3d at 969 (cleaned up). In the false advertising context,

> a previously deceived consumer may have standing to seek an injunction ... even though the consumer now knows or suspects that the advertising was false at the time of the original purchase.... Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* at 969-70 (cleaned up). Here again, Plaintiffs allege they would like to purchase the Lactation Cookies but will not because they are "unable to rely with confidence" on Defendant's advertising of the Products. (Dkt. No. 1 ¶¶ 8, 11, 15-16.) Plaintiffs further allege other Class members "will continue to purchase the Lactation Cookies, reasonably but incorrectly believing they increase a mother's breast milk upon consumption more than ordinary, significantly less expensive cookies." *(Id.* ¶¶ 9, 12, 16.) This supports a reasonable inference of actual and imminent future harm. *See Gasser v. Kiss My Face, LLC*, No. 17-CV-01675-JSC, 2017 WL 4773426, at *3-4 (N.D. Cal. Oct. 23, 2017).

**2. Restitution**

With respect to restitution, however, Plaintiffs have not plausibly alleged the inadequacy of a remedy at law. In the Complaint, Plaintiffs allege monetary damages, if available, "would *not*



United States District Court
Northern District of California

be adequate to address the injuries suffered by Plaintiffs" because "restitution would allow recovery even when normal consideration associated with damages would not." (Dkt. No. 1 ¶ 63) (emphasis added). Plaintiffs do not provide any further allegations or legal reasoning to support this conclusory assertion. Moreover, Plaintiffs' claims for restitution are "rooted in the same theory and factual allegations" as their claims for damages. *Elgindy v. AGA Serv. Co.*, No. 20-CV-06304-JST, 2021 WL 1176535, at *15 (N.D. Cal. Mar. 29, 2021). So, Plaintiffs do not plausibly allege the inadequacy of their legal remedies sufficient to support equitable jurisdiction of their restitution claims.

Although *Sonner* does not preclude plaintiffs "from pursuing alternative remedies [such as the equitable remedy of restitution] at this early stage of the suit," *Warren v. Whole Foods Mkt. California, Inc.*, No. 21-CV-04577-EMC, 2022 WL 2644103, at *9 (N.D. Cal. July 8, 2022), the Court elects to dismiss Plaintiffs' restitution claims now, as opposed to revisiting Plaintiffs' entitlement to the equitable remedy of restitution at a later stage, because of the material impact of these claims on discovery and the scope and complexity of the case. For example, Plaintiffs' CLRA claim for monetary damages has a three-year statute of limitations, *see* Cal. Civ. Code § 1783, while Plaintiffs' UCL claim for restitution has a four-year statute of limitations, *see* Cal. Bus. & Prof. Code. § 17208—thereby increasing the scope of discovery by an entire year. Accordingly, dismissal of Plaintiffs' restitution claims at this earlier stage of proceedings supports the "just, speedy, and inexpensive determination" of the underlying action. *See* Fed. R. Civ. P. 1.

***

Because Plaintiffs plausibly allege the inadequacy of legal remedies as to their claims for injunctive relief, but not for their restitution claims, the Court DENIES Defendants' motion to dismiss Plaintiffs' prayer for injunctive relief but GRANTS Defendants' motion to dismiss Plaintiffs' restitution claims. The dismissal is without prejudice to pursuing the claims in state court. *See Guzman v. Polaris Indus. Inc.,* 49 F.4th 1308, 1314 (9th Cir. 2022). But it is also without leave to amend because, at oral argument, Plaintiffs conceded they could not allege anything more about the purported inadequacy of their legal remedies than already asserted in the

Complaint.[6]

**B. Punitive Damages**

Plaintiffs request punitive damages under two separate state laws: California's CLRA, Cal. Civ. Code § 1750, *et seq.* and New York's GBL §§ 349 and 350. Defendants argue Plaintiffs are not entitled to punitive damages under the CLRA because they "fail to allege any defendant-specific facts showing that either Munchkin or Why Brands believed any challenged statement was false when made" and "plead no facts showing that any officer, director, or managing agent authorized, ratified, or engaged in malicious, oppressive, or fraudulent conduct." (Dkt. No. 15 at 27-28.) "Defendants apply the wrong standard for evaluating the sufficiency of Plaintiffs' pleadings in federal court." *Gasser v. Kiss My Face, LLC*, No. 17-CV-01675-JSC, 2017 WL 4773426, at *9 (N.D. Cal. Oct. 23, 2017). In California state court, a plaintiff must plead facts to support the conclusion the defendant acted with malice, fraud, or oppression to state a claim for punitive damages. Cal. Civ. Code § 3294(a). In federal court, the Federal Rules of Civil Procedure provide the pleading standard. Pursuant to Rule 9(b), "malice, intent, knowledge, and other conditions of the mind may be alleged generally."

Accordingly, plaintiffs need not plead with "any particularity in connection with an averment of intent, knowledge or condition of the mind." *In re GlenFed Sec. Litig.,* 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd,* 642 F.3d 1207, 1216 (9th Cir. 2011). Here, Plaintiffs allege Defendants "knew or should have known, prior to distributing the Lactation Cookies into the consumer marketplace, that the Lactation Cookies fail to conform to Defendants' Milk Production Representations and other lactation focused representations, and do not increase milk supply and production any more than a regular, less expensive cookie without the same or similar representations." (Dkt. No. 1 ¶¶ 58, 93.) Even so, Plaintiffs allege, Defendants "continue to distribute the materially misleading Lactation Cookies" to "garner market share and capitalize on consumer demand for nursing

---

[6] At oral argument Defendants also confirmed they are asserting, and not waiving, the equitable jurisdiction defense. *See Ruiz v. Bradford Exch., Ltd.*, 153 F.4th 907, 918 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 2605 (2026).

support products and foods." (*Id.*) Plaintiffs further allege Defendants "knew these representations were false and misleading but nevertheless made such representations," pointing to the AJCN study of Defendants' own cookies as well as consumer complaints concerning the Products' lack of efficacy. (*Id.* ¶ 155.) These allegations support an inference of fraudulent intent sufficient to sustain Plaintiffs' pleading of punitive damages. So, Defendants' motion to dismiss Plaintiffs' request for punitive damages under California law is DENIED.

Plaintiffs concede, however, to dismissing the punitive damages demand under GBL §§ 349 and 350. (Dkt. No. 32 at 29.) So, the Court DISMISSES Plaintiffs' requests for punitive damages under both New York laws.

## V. BREACH OF IMPLIED WARRANTY

Defendants also move to dismiss Plaintiffs' breach of implied warranty claim because Plaintiffs "necessarily fail to plead vertical privity" between Plaintiffs and Defendants when Plaintiffs alleged they purchased the Lactation Cookies at retailers Target, Walmart, and Amazon. (Dkt. No. 15 at 26-27; Dkt. No. 1 ¶¶ 7, 10, 13–14.) Defendants are correct that California law requires consumers stand in vertical privity with a manufacturer to bring an implied warranty claim under California Commercial Code Section 2314. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).

However, there are several exceptions to California's privity requirement including when "plaintiff[s] rel[y] on written labels or advertisements of a manufacturer," *id.*, when "plaintiffs are the intended third-party beneficiaries of an implied warranty," *Zeiger*, 304 F. Supp. 3d at 854., and "in cases involving foodstuffs," *Rodriguez v. Natures Path Foods, Inc.*, No. 2:25-cv-01735-SPG-E, 2025 WL 3691807, at *9 (C.D. Cal. Sept. 23, 2025) (explaining courts "'routinely deny motions to dismiss implied warranty of merchantability claims' based on deceptive food labeling and advertising." (quoting *Shin v. Sanyo Foods Corp. of Am.*, No. 2:23-cv-10485-SVW-MRW, 2024 WL 4467603, at *6 (C.D. Cal. Aug. 13, 2024) (collecting cases))). All three exceptions apply here. So, Plaintiffs do not need to establish privity of contract with Defendants to state a claim under the implied warranty. *See, e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 984 (N.D. Cal. 2014). The Court DENIES Defendants' motion to dismiss Plaintiffs' implied

breach of warranty claim.

## VI. CLASS CLAIMS

"[A] motion to strike class claims based only on the pleadings is proper only if the court 'is convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed.'" *Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 976 (N.D. Cal. 2019) (quoting *In re iPad Unlimited Data Plan Litig.*, No. 10-CV-2553-RMW, 2012 WL 2428248, at *2 (N.D. Cal. June 26, 2012)). Here, Defendants move to strike every class allegation because class members' purchases "occurred across states with materially different consumer protection and unjust enrichment laws," which have "a stronger interest than California" in applying their own laws. (Dkt. No. 15 at 28-30.)

"California's consumer protection laws may sometimes be invoked by out-of-state purchasers." *Debari v. Winix Glob. LLC*, No. 24-cv-06596-JSC, 2025 WL 56414, at *5 (N.D. Cal. Jan. 9, 2025). California courts have concluded, for example, that '[the UCL, FAL, and CLRA] may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California." *Effinger v. Ancient Organics LLC*, 657 F. Supp. 3d 1290, 1301 (N.D. Cal. 2023) (citations omitted). "At a minimum, before permitting costly nationwide discovery, Plaintiffs must allege facts that suggest California's laws might reach absent class members with no alleged connection to California." *Debari*, 2025 WL 56414, at *5.

In *Effinger*, the court deferred the nationwide class choice-of-law analysis to class certification because the plaintiffs adequately pleaded the defendant's wrongful conduct occurred in California, and the defendant failed to show another forum's law should apply. 657 F. Supp. 3d at 1301. Similar conditions are met here. The Complaint alleges Defendants are headquartered in Van Nuys, California and direct the labeling and advertising of the Lactation Cookies from there. (Dkt. No. 1 ¶¶ 17-18.) It also alleges Munchkin's Vice President of Marketing and Why Brands's Chief Brand Officer and Creative Director operate out of the Los Angeles area, and Defendants' labeling and advertising of the Lactation Cookies was "developed, conceived, reviewed, approved, and otherwise controlled" from California. (*Id.* ¶ 17.) These allegations place the challenged conduct in California, and Defendants make no showing that another state's law should govern.

So, the Court cannot finally decide the choice-of-law issue at this stage and DENIES Defendants' motion to strike Plaintiffs' nationwide class allegations without prejudice.

However, to facilitate efficient resolution of the case, the Court is inclined to decide the choice-of-law question prior to class certification. Pursuant to the Court's order at oral argument, the parties have stipulated to a briefing schedule on Defendants' motion for judgment on the pleadings regarding the choice-of-law issue. (Dkt. Nos. 39, 40.)

**CONCLUSION**

For the reasons stated above, the Court GRANTS the motion to dismiss Plaintiffs' restitution claims without prejudice, but also without leave to amend. The motion to dismiss is otherwise DENIED.

This Order disposes of Docket No. 15.

**IT IS SO ORDERED.**

Dated: November 25, 2026

Jacqueline Scott Corley

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California